# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## THIBAULT *v.* McHANEY, RECEIVER.

### Opinion delivered January 8, 1917.

1. APPEAL AND ERROR—REVERSAL AND REMAND OF CAUSE—PRACTICE—DUTY OF CHANCELLOR—IMPROVEMENT DISTRICTS—PRELIMINARY EXPENSES.—On a former appeal it was held that damages suffered by certain land owners was not an expense incurred for preliminary work in the construction of an improvement, and a decree in their favor was reversed and remanded. The reversal of the decree annulled that part of the decree which was in favor of these land owners, and the remand of the cause opened it for further investigation. *Held*, thereafter the chancery court was correct in taking up the subject anew, and there being no other proof supporting the validity of the claims or showing that they constituted expenses for preliminary work, the court was correct in disallowing them.

2. ATTORNEY'S FEES—RESISTING CLAIMS AGAINST AN IMPROVEMENT DISTRICT—PROCURING REPEAL OF ACT.—Attorneys who brought about the repeal of Act 420, Acts 1907, as amended by Act of 1909, p. 304, by the enactment of Act 127, Acts 1913, and attorneys who resisted claims presented against the district after the passage of the repealing act, will not be allowed fees for their services, in the absence of an express provision in the statute providing for the payment of the same.

3. IMPROVEMENT DISTRICTS—REPEAL OF STATUTE CREATING—PRELIMINARY EXPENSES.—Claims to be allowed against the Fourche Drainage District, the acts creating which were repealed by Act 127, Acts 1913, are limited to those for expenses preliminary to the ascertainment of the cost of the improvements and the amount of benefits. There is no authority in the statute for those in control of the affairs of the district to incur any liability at all except that which leads up to and precedes the ascertainment of the feasibility of the project, that is to say, the cost of the improvement and the amount of benefits to be derived from the construction of the improvement.

4. IMPROVEMENT DISTRICTS—PRELIMINARY WORK DONE BY ENGINEERS—COMPENSATION.—The compensation to certain engineers for services rendered the Fourche Drainage District in preliminary work, fixed at $18,000.00.

5. IMPROVEMENT DISTRICTS—ORGANIZATION—PRELIMINARY WORK—FEES DUE ATTORNEYS FOR THE DISTRICT.—The compensation to be.

allowed attorneys for the Fourche Drainage District after the repeal of the statutes creating the same, is limited to services rendered in determining the feasibility of the project, including the conduct of litigation involving the existence of the district.

6.  FOURCHE DRAINAGE DISTRICT—CLAIM OF CONSULTING ENGINEER ALLOWED.—The claim of the consulting engineer for services on preliminary work, allowed.

7.  FOURCHE DRAINAGE DISTRICT—CLAIMS OF DIRECTORS AND OFFICERS.—Amounts due officers and directors fixed.

8.  FOURCHE DRAINAGE DISTRICT—CLAIMS OF ASSESSORS.—Claims of assessors disallowed.

9.  FOURCHE DRAINAGE DISTRICT—CORRECTNESS OF ASSESSMENTS.—The statute repealing the organization of the Fourche Drainage District, constituted a legislative determination of the correctness of the assessment of benefits made, and is conclusive, and that question is beyond judicial review in the absence of a showing that the assessment was improperly made, or that no benefit could possibly accrue to the property to be taxed. See *Fellows* v. *McHaney,* 113 Ark. 363.

10.  FOURCHE DRAINAGE DISTRICT—REFUND OF EXCESSIVE PAYMENT MADE BY PROPERTY OWNERS.—The order of the chancellor ordering a refund to taxpayers in excess of the amount necessary to pay the legal claims against the district, upheld.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed in part and affirmed in part.

*Marshall & Coffman,* for Joe Asher and B. F. Dreher.

*Bradshaw, Rhoton & Helm,* for Braddock Land & Granite Co., *et al.,* and *Ratcliffe & Ratcliffe,* for J. K. Thibault, Ratcliffe & Ratcliffe, *et al.*

1.   The phrase "preliminary expenses" negatives the idea of completed work. The engineer's claim was excessive, the allowance being excessive. The allowance is greatly in excess of what properly can be considered a preliminary expense under the opinion on the former appeal.

2.   This applies also to the claims of the attorneys. Of the other claims, those of Dickinson, Lenon, Morris, Watkins *et al.,* as secretary and directors, should not have been allowed. Nor should the claims of the trust companies for amounts paid engineers, Lund & Hill, excess over $5,000.00; Peyton Johnson, Democrat Co.,

Lenon, Secretary; Kavanaugh, President; Gazette Publishing Co.; Manufacturers' Record; Randolph, etc., have been allowed. The claims of the Southern Trust Co. for Lund & Hill, Peyton Johnson, Beach Abstract Co., Kavanaugh, director, Central and Reporter and for contract notices should have been also disallowed. All questions as to preliminary expenses were largely settled in 50 Ark. 146; 119 *Id.* 198.

3. The claims for lands taken or damaged were reduced to judgments and became final, as there was no appeal. 128 Ill. 510; 21 N. E. 628; 191 U. S. 499.

4. As to allowance of expenses and attorneys fees, 105 U. S. 527, is the leading case. They were entitled to reimbursement out of the fund or by proportionate contributions from those who receive the benefits. 113 U. S. 122; 144 *Id.* 457; 16 Fed. 21; 38 *Id.* 282; 53 Ark. 545, 569; 76 *Id.* 501; 95 *Id.* 389, and others. See also 117 U. S. 582; 57 Fed. 70, 98; 98 *Id.* 779; 113 Ga. 207; 102 Fed. 31; 28 U. S. (L. Ed.) 918.

The petitioners should be allowed the expenses incurred by them and the counsel such a fee as is reasonable under the circumstances.

*Frank H. Dodge* and *J. W. Blackwood*, for E. L. McHaney, the Receiver.

1. All questions as to the assessments have been settled in 113 Ark. 363 and 119 *Id.* 198. The claims for lands taken or damaged are not *res judicata.* On the reversal of the case on former appeal these interventions were governed by the opinion in that case. They were part and parcel of the case and of the decree therein. 119 Ark. 203, 211.

2. Attorneys fees were properly disallowed. Gluck & Becker on Receivers of Corp., page 296; 91 N. Y. 57; 31 Hun. (N. Y.) 623; 122 Mass. 421. The attorneys only represented their own clients. 76 Ark. 504, 505; 95 *Id.* 398; 105 *Id.* 443; 105 U. S. 527.

3. The claims of attorneys and engineers were excessive. Where a district is dismembered this court has laid down the rule. 107 Ark. 290; 112 *Id.* 357;

185 S. W. 285; 119 Ark. 200; 86 Ark. 8. See also *Sain* v. *Bogle*, 122 Ark. 14; 115 Ark. 437. This applies also to many of the claims allowed by the special master. This court should determine the allowances and settle whether they are excessive or not.

4   The taxpayers who paid in full should be reimbursed, thus placing all *in statu quo*. They were not voluntary payments. 96 Ark. 153; 72 *Id.* 555; 37 Cyc. 1181.

*J. W. & J. W. House, Jr.*, for Lund & Hill.

1.   The claim is for preliminary expenses, and 2½ per cent. is not excessive. 119 Ark. 188 is conclusive of their claim. The doctrine is well settled. 44 Ark. 383; 92 *Id.* 484; 92 *Id.* 554; 97 *Id.* 147; 99 *Id* 218; 63 N. W. 957.

The cases of *Sain* v. *Bogel*, 122 Ark. 14, and *Ayers* v. *Crittenden Co.*, 123 Ark. 246, do not militate against our contention.

2.   Lund & Hill paid out in cash $15,000.00 for work, without including their time or salary. This was a matter of contract and legal and binding.

*Bradshaw, Rhoton & Helm*, for Braddock Land & Granite Co. and Nettie K. Riffle.

1.   The persons who voluntarily paid in full are not entitled to have same returned. 119 Ark. 119; 107 *Id.* 24; 65 *Id.* 155; 46 *Id.* 358; 97 U. S. 181; 98 *Id.* 541; 37 Cyc. 1178-80.

2.   Attorneys' fees and costs should have been allowed the interveners. The allowance of $5,000.00 to the attorneys of the district is excessive.

3.   The court erred in overruling the exceptions to the report of the master. 119 Ark. 198-9.

4.   The court erred in overruling the protest of interveners. Art. 2, § 22, and Art. 8, § 8, Const. Ark., and Art. 14, § 1, Const. of U. S.

*Moore, Smith, Moore & Trieber* and *Rose, Hemingway, Cantrell, Loughborough & Miles*, for the Union, Mercantile and German Trust Companies.

The attack upon the allowances is without merit. Their claims were advances for preliminary expenses.

*Carmichael, Brooks, Powers & Rector,* for Southern Trust Co.

1. No appeal was taken from the allowance on the former appeal. The allowances were for preliminary expenses. *Sain* v. *Bogle,* 122 Ark. 14; 115 Ark. 445.

2. There is no merit in the claim of Ratcliffe & Ratcliffe for attorneys' fees. See the brief for the receiver.

McCULLOCH, C. J. This is the second appeal in this case, which was instituted in the Pulaski Chancery Court for the purpose of winding up an improvement district known as the Fourche Drainage District. The district was created by a special Act of the General Assembly of 1907 (Act. No. 420, page 1112) and the amendatory Act of 1909 (page 304); and the General Assembly of 1913 repealed the statutes creating the district (Act. No. 127, page 534) and provided for proceedings in the Pulaski Chancery Court to wind up the affairs of said district.

In the opinion of this court disposing of the case on the former appeal we held that the chancery court had erred in failing to observe the distinction between claims based upon preliminary or initial expenses incurred and those based on expenses of constructing the improvement, and in allowing claims other than those for preliminary expenses. In the opinion the character of claims to be allowed were defined in the following statement: "Under the terms 'preliminary expenses' would be included the cost incurred in litigation to determine whether or not the act creating the district was valid, and attorney's fees as counsel to the board in the preliminary work of organization, etc.; such costs as expenses for maps, plats, surveys of land and for engineering expenses in preparing the plans and specifications. In other words, all expenses incident to the investigation by which it is sought to

determine whether the value of the benefits to the lands by the improvements contemplated would exceed the cost of such improvement and thereby warrant its completion." 119 Ark. 188.

The decree was reversed and the cause was remanded with directions "to ascertain from this record, and other testimony if necessary, the claims for preliminary expenses, and to allow these claims; and also to allow the claims of the trust companies or others whose money was furnished to pay the claims for preliminary expenses to the extent and for the amounts only of such preliminary expenses; and to disallow and dismiss all claims for permanent work, and for such other and further proceedings looking to the adjustment and payment of the claims allowed as may be necessary and not inconsistent with this opinion."

When the cause was remanded, certain other issues were introduced. Appellant, J. K. Thibault, and his attorneys, Messrs. Ratcliffe & Ratcliffe, filed an intervention in which claim was made for fees of the attorneys for services rendered in procuring the passage of the Act of 1913 repealing the Act organizing the district, and also fees in prosecuting the former appeal to this court. There was a prayer for the allowance to the attorneys of a fee in the sum of $15,000.00. Messrs. Bradshaw, Rhoton & Helm, who were solicitors for the Braddock Land & Granite Company and certain other appellants on the former appeal, filed their petition in which they asked for fees for services rendered in prosecuting the former appeal. The petition also asked for allowance of court costs expended on the former appeal, but as those items have been paid no further reference need be made to them. The petitioners ask that a fee of $950.00 be allowed as compensation for services of the attorneys. The Braddock Land & Granite Company and certain other property owners filed an intervention protesting against the amount of the assessments against their lands, and alleged that the lands would have received no benefit from the improvement but would have been damaged

if the improvement had been constructed.    They also alleged that the assessments against their lands were exorbitant and discriminatory.

Further proof was taken concerning the amount of the claims against the district, and there was a reference to a master, who made his report to the court, setting out the amounts which were found to be justly due to the several claimants.    Among the claimants was Mr. George C. Pye and certain other land owners, whose property had been damaged in constructing the improvement, which, as shown in the former opinion of this court, had been begun before the work was stopped by the passage of the Act of 1913.    In the first decree those damages were allowed, but the master, under instructions from the court, disallowed those claims because they did not fall within the definition of preliminary expenses.    Those claimants filed exceptions to the report on the ground that there had been no appeal from that part of the former decree which allowed their claims, and that the former decree was, therefore, *res judicata* and could not be ignored by the court in its final order for the payment of the claims against the district.    There were a great many items in the master's report about which there is no controversy, and they need not be set out in detail.    Only those will be mentioned which are controverted, as shown by the exceptions filed to the report of the master.    Exceptions were filed to the allowance of the following items in the report:

No. 48.   W. W. Dickinson, service as director............................... $   220.00

No. 49.   W. E. Lenon, services as secretary to board............................   730.00

No. 51.   J. B. Morris, services as member of board............................   155.00

No. 52.   J. A. Watkins, services as member of board............................    95.00

No. 53.   Harry Keatts, services as member of board............................   110.00

No. 59.   W. S. Holt, services as member of
    board............................. $   145.00
No. 60.   Max Heiman, services as member
    of board.........................     145.00
Coleman & Lewis, attorneys' fee..........   5,000.00
Lund & Hill, engineers for the district.....  22,642.48
Joint claims of the trust companies:
Lund & Hill...........................   7,293.05
W. E. Lenon, salary as secretary..........     200.00
W. M. Kavanaugh, salary as president....     300.00
Arkansas  Democrat, publishing  contract
    notices.............................      44.00
Gazette  Publishing  Co.,  publishing  con-
    tractors' notices....................      44.00
Manufacturers' Record, contract notices...      11.20
Democrat Print. & Litho. Co., specifications,
    blank deeds and briefs...............      49.50
Southern  Trust Company, for loans subse-
    quent to August 7, 1912:
Lund & Hill, engineers.................     500.00
Beach Abstract Co., certificates of owner-
    ship..............................      25.00
W.  M.  Kavanaugh, salary as member of
    board.............................     525.00
Central States Contract Reporter, contract
    notices...........................      32.94
Engineering and Contracting contract
    notices...........................      18.00
Manufacturers' Record, contract notices...      24.80
Engineering Record....................      34.80

Money had been advanced by certain banks and
trust companies, and some of the items set forth above
are for allowances to those companies in reimbursement
of the amounts so paid.   Further exceptions were filed
to the allowance of the following items:
C. B. Meyers, for services as equalizer.....   $500.00
W. M. Moore, for services as equalizer....     500.00
R. W. Polk, for services as equalizer......     500.00
Peyton Johnson, for finding out value of
    right of way........................     250.00

Peyton Johnson, for estimating cost of
    right of way........................ $  100.00
Isom Randolph, services as consulting engineer. 1,365.85

The last two items were embraced in the allowances to the trust companies, it appearing that those concerns having advanced the money to the district for those payments. The court overruled all of the exceptions and entered a decree approving the master's report so far as concerned the disputed items set forth above, and entered a decree allowing the claims. The court also in its decree denied the prayer of appellants for the allowance of fees for the services of their attorneys. The court also overruled the plea of *res judicata* of appellants Pye and other land owners, and entered a decree disallowing their claims for damages to land. The total amount of claims allowed under the last decree was about $38,000.00 less than under the former decree, which was reversed by this court, and it became necessary to change the order with respect to the amount of money to be raised by assessments to pay those claims. In the former decree the court estimated the amount it would require to pay off the claims and levied assessments payable in five annual installments.

It was shown to the court that many of the property owners had, prior to the entry of the last decree, paid all the annual installments, whilst many had not paid them all and some had not paid any at all. An order was therefore made directing the receiver to refund to the tax payers the proportionate amount left after the collections were made over and above the amount necessary to discharge the claims and the expenses of winding up the affairs of the district. The Braddock Land & Granite Company and certain other property owners, who it appears had not paid their assessments, but were resisting the payment thereof, filed an intervention in which it is shown that the payments made by tax payers were purely voluntary and had brought into the hands of the receiver funds nearly sufficient in amount to pay off the claims without exacting .payment from those who had not paid, and

asked that no order be made refunding the excess to those who had paid the full five annual installments. It was asked that the decree ordering the refund be modified, but the court overruled this prayer. Appeals have been duly prosecuted to this court.

(1) The sole point raised by the appeal of Mr. Pye and others whose lands were damaged by the construction of the improvement is that there was no appeal from the former decree allowing their claims, and that that decree was a final adjudication of their rights which could not be disturbed in the subsequent proceedings. Those appellants are mistaken, we think, in assuming that there was no appeal from the former decree. We said in the former opinion that the whole proceedings must be treated as a unit, and the appeal necessarily brought up for review the right of the owners of damaged lands to recover on their claims, and the decision of this court was against those claimants on their right to recover. We expressly held that damages resulting from the construction of the improvement did not constitute preliminary expenses and could not be allowed as a part of the claims against the district. The reversal of the decree, of course, annulled that part of the decree which was in favor of those appellants, and the remand of the cause opened the case for further investigation. The court was correct in taking up that subject anew, and there being no other proof supporting the validity of the claims or showing that they constituted expenses of preliminary work, the court was correct in disallowing them. That portion of the decree is therefore affirmed.

(2) Appellants contend that allowances should be made to their attorneys for services performed, which should be taxed against the fund raised by assessments levied on the property of the district, and they invoke the rule recognized in some quarters that where the services of an attorney for one person interested in common with others in the creation or preservation of a fund inures to the benefit of all, compensation should be made for said services out of the fund so

created or preserved. This court has had something to say on that subject in cases cited on the briefs, and has placed restrictions upon that doctrine as announced by other courts, but it is sufficient to say in the present case that the doctrine has no application, for the reason that there has been no creation or preservation of common funds or other property. The controversy has been over the allowance of claims against the district, and there has been no pursuit of common property for distribution among those interested in it, such as was the case in the instances where this doctrine has been applied. No case has been brought to our attention where the doctrine has been applied in a case like this, where the litigation in which the services rendered constituted merely a resistance of claims against the tax payers. In a case like this every tax payer defends for himself, and the fact that the decisions concerning his rights affect the rights of others is no reason why they should be taxed with the payment of the attorney's fees.

There is another all-sufficient reason why the doctrine should not be applied in this particular case, and it is that the statute contains no authority for the allowance of such a claim against the funds of the district. In the recent case of *Sain v. Bogle*, 122 Ark. 14, we said, concerning the right of attorneys to recover fees against an improvement district, that "like all other cases, the attorneys must look for pay for their services to those who employ them unless there is some special provision of the statute for their payment otherwise." The statute under which this proceeding was conducted provides only for the payment of claims against the district, which we construed to mean claims for strictly preliminary work. There is no authority whatever for allowing a claim for attorneys' fees in bringing about the legislation which dissolved the district, nor for resisting the claims presented against the defendant. The district embraced the whole city of Little Rock, and a large area of adjoining territory—thousands of property owners, in

fact—and the law makers doubtless had it in mind that out of the numerous claimants against the distract, and still more numerous property owners, there would be sufficient conflict of interest to enable the court to determine the rights of the parties without taxing the property owners with the fees of attorneys whom some of the property owners might see fit to employ to represent them in the litigation. The statute therefore leaves no opening for the application of the equitable doctrine which has been invoked for the allowance of an attorney's fee for the protection of common interests. The statute must be strictly construed for the reason that whatever is taken from the property owners is absolutely without return in benefits, and no burden ought to be imposed upon them which is not strictly authorized by the statute itself.

The largest and most important of the controverted claims is that of the engineers, Lund & Hill, who made the surveys and prepared the plans and specifications. The court allowed the sum of $22,116.69, which included the sum of $7,293.05 and the further sum of $500.00 paid to the engineers out of the funds advanced by the trust companies. The testimony bearing upon this claim is somewhat voluminous. It appears that the engineers were engaged for a considerable length of time in making the surveys and working out the plans, and that they kept a considerable force of men at work. The evidence shows that their actual expenses amounted to about $15,000.00. They made complete plans for carrying out the drainage project, which included clearing right of way, dredging the canals and lateral sections, putting in culverts and flood gates, pumping stations and a complete levee system for creeks. The evidence establishes the reasonableness of the charge for the whole of the services rendered by the engineers, but the conflict in the testimony over this item arises over the question as to what part of the work done by them comes within the designation of preliminary expenses.

The engineers had a contract with the board of

directors to prepare the plans and specifications and let the contract and supervise the work, and to receive as compensation five per centum of the total cost of the construction. The engineers made complete plans, and, in fact, advertised for bids and superintended the letting of the contract. Their present claim is based upon the contention that one-half of the total compensation should be allowed for the preliminary work, and that they are therefore entitled to two and one-half per cent. of the estimated cost of the improvement. This is the amount of the claim, and the court allowed it in full. Mr. Lund, one of the engineers, testified at length in the case, and gives a very satisfactory explanation of the necessity for doing the work in order to determine the cost of the improvement and the feasibility of the plan, and his testimony is very convincing that the compensation claimed for the whole service is not exorbitant, but it is also very clear from his testimony that he has not an accurate idea as to the precise line between purely preliminary work and permanent work, and he is evidently laboring under some confusion as to the distinction between work that is preliminary to the beginning of actual construction and that which is preliminary merely to the ascertainment of the cost of the improvement.

(3) There is no ground to mistake the meaning of the rule we laid down in our former decision, that claims against the district must be limited to those for expenses preliminary to the ascertainment of the cost of the improvements and the amount of benefits. There is no authority in the statute for those in control of the affairs of the district to incur any liability at all except that which leads up to and precedes the ascertainment of the feasibility of the project, that is to say the cost of the improvement and the amount of benefits to be derived from the construction of the improvement. A careful perusal of the testimony of Mr. Lund leaves the impression that in the estimate of two and one-half per cent. of the cost of the improvement as a proper fee for compensation for preliminary work, he has in

mind all the work that was performed prior to the beginning of the construction work. This is supported by the fact that the firm of engineers superintended the advertisements for bids and the letting of contracts, which, of course, preceded the actual construction.

(4)   There were three other engineers who testified as expert witnesses in this case, and two of them estimated the compensation for the preliminary work at $10,000.00. The other testified that the allowance for purely preliminary work should not exceed two per cent. of the total cost of the improvement. According to the statement of the last-named witness, the claim would amount to just a little over $18,000.00   It should be added that the two witnesses who fixed the compensation at $10,000.00 do not show the same degree of familiarity with projects of this magnitude as do the other two witnesses, including Mr. Lund. It is difficult for a court to find an exact standard for fixing fees of this character, but we have reached the conclusion that the most definite statement is that of the witness Miller, who fixes the fee for preliminary work at two per cent., and we have concluded to base the finding upon his evidence and to fix the claim of Lund & Hill at the sum of $18,000.00. We are thoroughly convinced that the amount allowed by the court is excessive, and that the sum named above is the maximum amount which can be allowed under the testimony in this case. This, of course, includes the sums paid by the trust companies, which should be deducted, and the allowance to that extent in favor of the trust companies will be affirmed.

(5)   The next one of the claims in size and importance is that of the attorneys for the district. In the first decree the court allowed $5,500.00, and in the last decree allowed $5,000.00, after having deducted the estimated fee for preparing contracts for construction work which the court allowed in the former decree. We have no doubt that the compensation allowed to the attorneys was very reasonable if all the services rendered by them could be considered, but it is

evident that services were embraced in fixing this compensation which are not chargeable against the district. The evidence in support of the claim covers the whole period from the passage of the original Act creating the district in the year 1907 up to the passage of the repeal bill in 1913. Mr. Coleman, one of the attorneys, testified in detail as to services performed by his firm for the district. He shows that nearly two weeks' time was given to the preparation of the original bill, and he explains the many difficulties which grew out of the necessity of combining the city property with country property into one district. He shows that he spent much time in presenting the bill to the Legislature, appearing several times before the committees of the Legislature. He says that he was very frequently called to meet with the board of directors for conferences and advice concerning the progress of the affairs of the district, and that they represented the district in two test cases which were brought to determine the validity of the statutes. One of the suits arose out of the original statute, and the other under the Act of 1909 striking out the requirement for obtaining consent of the majority of the property owners. The attorneys gave attention to the examination of titles of right of way, and negotiated purchases of right of way and preparing deeds; they were consulted by the engineers and directors about the preparation of contracts, and were constantly in communication with various parties who contemplated bidding on the work. Many other things are mentioned by Mr. Coleman, matters which constantly taxed the time and patience of the attorneys as the representatives of the district. Finally, when the effort was successfully made by opponents of the scheme to secure a dissolution of the district by a special Act of the Legislature, the attorneys, under directions from the board, appeared before the various legislative committees, and also before mass meetings of tax payers, in resistance of the effort to repeal the law.

Now, all of these matters, it appears, were taken into consideration in fixing the compensation of the

attorneys, and when we get back to the rule laid down by this court it is clear that a great many of them are improper matters of consideration. It must be remembered that under our former decision the compensation to be allowed narrows down to expenses which were necessary to ascertain the feasibility of the plan. Of course, it was proper to have the services of attorneys in the proceedings to that extent, but no compensation could be claimed for services which related to the completion of the improvements for which the organization of the district was designed. The work of preparing the original bill and presenting it to the Legislature, and urging it before the committees of that body, was not service which was chargeable against the district. *Sain* v. *Bogle, supra.* Neither were the services performed in opposition to the effort of tax payers to secure the dissolution of the district chargeable against the district. The services thus performed by the attorneys for and against the scheme were in the interest of the individuals who were favoring or opposing the creation or continuation of the district, and not of the district itself. In other words, those services were performed in promoting the scheme and not in carrying out the purposes of the organization itself. Of course, the fees for conducting the litigation which involved the very life of the district should properly be allowed as a claim against the district, as we held in the former opinion; so would any other service performed looking to the ascertainment of the feasibility of the plan. But it is plain, we think, that much of the services of the attorneys were performed in matters which really did not involve legal services, and much that involved the permanent work in the construction of the improvement. So much of the services detailed by Mr. Coleman being for matters which could not be charged against the district, we cannot escape the conclusion that the fee allowed by the court is excessive. This again presents a difficult matter for our determination, as there is no exact standard by which we can measure the amount of the

fee which should be allowed.   We have concluded, however, that when the magnitude of the plan of this organization is considered, and the importance of the services performed by the attorneys, they are entitled to a very substantial amount, and we think that the sum of $3,000.00 will not be excessive, and the amount of the allowance will be fixed at that sum.

(6)   The item in the account of one of the trust companies for the sum of $1,365.00 advanced and paid to Isom Randolph is not very seriously attacked in the briefs before us, but it has given us serious consideration.   A majority of the court are of the opinion that the allowance was not improper, as the evidence shows that it was necessary to have the services of a consulting engineer in order to determine the feasibility of the plan and that the charge is not excessive.   There is nothing in the statute limiting the power of the board of directors to the employment of a single engineer or one firm of engineers.   It authorizes the board to elect a chief engineer (Sec. 5), which does not appear to have been done, but the consulting engineer was employed to pass finally on the feasibility of the plan. The decree as to that item will therefore be affirmed.

(7)   The next items for consideration relate to the claims of directors and the president and secretary of the district, some of the claims having been paid by the trust companies in the amounts involved in their claims which were allowed.   The claims aggregate $2,705.00, which represents the expenses in the way of fees of the officers of the district in providing for the preliminary work.   In other words, it is found that they claimed fees in that amount for services performed in having the survey made and plans formed and the assessments for betterments.   The highest fee charged by any one of the directors is $220.00, which indicates forty-four days of actual services, as the statute fixes the fees of the directors at "the sum of $5.00 *per diem* for the time actually engaged in their duties as such." The statute also provides that the board of directors shall "elect a treasurer, chief engineer and such other

officers as may be necessary to carry out the purposes of this Act, and said board shall prescribe the duties and fix the pay of said officers, and their terms of office shall be at the pleasure of said board."

There is no testimony in the record, as abstracted, showing the amount of services actually performed by these officers. When it is considered that their duties were confined to having the preliminary work done, and excluding anything that might have been done in the way of issuing bonds, letting contracts and carrying forward the work, we fail to discover any grounds for allowing the officers the amount claimed. It is inconceivable that at the sum of $5.00 a day "for the time actually engaged" they could have been in the actual service of the district that length of time merely to employ engineers and arrange for the assessment of benefits. The statute authorizes them to select three land owners as assessors, and the board had nothing to do with the assessment of benefits. The duties of the board were, as before stated, confined to an ascertainment of the cost of the improvement and the amount of benefits, and they had no right to devote any other time or attention at the expense of the district until those results were ascertained. Nor could they impose upon the district the burden of fixed salaries of officers until there was something for the officers to do. There is nothing in the record to base the finding on as to the amount of services performed by these directors and officers, but we have concluded that an allowance of the statutory *per diem* for ten days would be sufficient compensation for the services performed. That would be the sum of $50.00 for each of them, including the president and secretary.

(8) The next items are those embracing the claims of C. B. Meyers, W. M. Moore and R. W. Polk, the three members of the board of assessors "as equalizers." The statute does not create the office of equalizer separately, but provides that three land owners shall be employed as assessors, that after the assessment is completed notice should be given and a date set for

hearing the complaints of the assessed land owners, and that any person or corporation aggrieved by the action of the board in fixing the assessments "shall have the right for twenty days from the date of the adjustment of the said board of assessors, sitting as a board of equalization as aforesaid, to appeal to any court of competent jurisdiction to set aside said assessment list." The three assessors each presented claims for $500.00 for services as an assessor, and $500.00 "for service as equalizer." One of them also included in his claim an item of $200.00 for clerk of the board. The claim was allowed in full by the master, and also by the court, and the claims are challenged only to the extent of the item of $500.00 for "services as equalizer."*

The directors employed J. C. Morrison to make out the assessment books, and a claim was allowed in Morrison's favor in the sum of a thousand dollars for that service. The correctness of that claim has not been challenged, and it is not brought before us for review, and it is only mentioned as minimizing the work of the assessors themselves as it shows that the assessors were not required to make out the lists and descriptions of the property, but were called on merely to fix the benefits. The board of assessors was also allowed the services of a secretary, the claim for services in that respect not being questioned. There is nothing in the record, as abstracted, to show the number of days that these assessors were engaged, but the claim appears to be arbitrarily divided at half-and-half between the original assessment of benefits and the hearing of complaints of land owners. It is possible that enough time and attention was given to the last mentioned service to justify a charge of this sort, but it is not shown and we cannot assume that that much was earned by the assessors in performing that part of their duties. The item of $500.00 allowed to each of those parties is

---

*It was subsequently shown to the court that no appeal had been perfected as to the respective claims of C. B. Meyers, R. W. Polk and W. M. Moore, and the judgment of this court reversing the chancellor's decree as to these items was set aside.— Reporter.

therefore disapproved, and the decree of the chancellor is to that extent reversed.

There are no other items which are attacked in the briefs, and what we have said disposes of this branch of the case.

(9) The Braddock Land & Granite Company and certain other property owners filed a protest against the correctness of the assessments, claiming that the same were arbitrary and without just foundation. The court refused to disturb the assessments and sustained a demurrer to the intervention and dismissed it for want of equity, and an appeal has been prosecuted from that feature of the decree. The question is concluded by the decision of this court in *Fellows* v. *McHaney*, 113 Ark. 363, where we held that the repealing statute constituted a legislative determination of the correctness of the assessment of benefits and was conclusive, and that the question was beyond judicial review "in the absence of a showing that the assessment was improperly made, or that no benefit could possibly accrue to the property to be taxed." The intervention does not set out any facts, but merely pleads the conclusion that the assessments are arbitrary and that no benefit would result. We think the court properly sustained the demurrer.

(10) The last question presented in the case arises upon the contention of appellants with respect to the order of the court refunding to tax payers the excessive amount paid over to the receiver, over and above the amount necessary to discharge the claims against the district. The contention, as we understand it, is that because a large number of tax payers voluntarily paid the five assessments ordered by the court, they should not be allowed to receive any of it back, and that the whole amount so paid should be used in discharge of the claims, even in reduction of the amount to be paid by those who have wholly failed to comply with the order of the court. Appellants invoke the well-established rule that there can be no recovery of money voluntarily paid in discharge of an illegal

claim. This rule was recognized in the recent case of *Brunson* v. *Board of Directors*, 107 Ark. 24, where we held that a land owner who had knowingly and voluntarily paid assessments, which had been improperly levied, could not recover the same. The question of right to recover voluntary payments has no application whatever to this case. The other property owners are not seeking to recover funds illegally exacted, but the question arises solely as to their right to have money refunded which has been paid in excess of the amount actually needed for discharging the obligations for which the assessments were imposed.

The ascertainment by the court of the amount necessary to assess against the property was a mere estimate, and the payment by the property owners was upon the implied assurance that the amount in excess of what was required to discharge the obligations of the district would be refunded *pro rata* to the property owners. Now these recalcitrant tax payers say that they should be permitted to profit by the fact that they held back and refused to pay until the other property owners paid substantially enough to discharge the joint obligations. The position is wholly untenable, and the doctrine invoked has no application, which is based entirely upon the theory of estoppel—that one who pays money voluntarily, and with full knowledge of the facts, will not be heard to assert the right to recover it back. In this instance the property owners undoubtedly paid voluntarily with knowledge of the facts, but, as already stated, they paid upon the implied assurance that all of the tax payers would be required to respond in like proportion, and that any sum in excess of the amount required to discharge the obligations would be refunded.

The decree of the chancellor is reversed so far as it relates to the reduction of the several claims as indicated in this opinion, and in other respects the decree will be affirmed. The cause will be remanded with directions to enter a decree fixing the amount of the claims in accordance with this opinion.

HART, J., dissents.