GOULD *v.* SANFORD.

Opinion delivered October 23, 1922.

1. STATUTES—PUBLIC POLICY.—Employment of attorneys to prepare a bill for a legislative enactment does not contravene any rule of public policy.

2. CONTRACTS—PUBLIC POLICY.—Public policy, in regard to the making of contracts, is what the lawmakers themselves declare it to be.

3. IMPROVEMENT DISTRICTS—JUSTIFICATION OF SPECIAL ASSESSMENTS.—The only justification for the imposition of special assessments is the fact that special benefits are to be enjoyed.

4. IMPROVEMENT DISTRICTS—DETERMINATION OF BENEFITS.—It is generally a question for the Legislature to determine whether or not benefits will accrue from a local improvement, and its determination of the question should be respected by the courts unless it is on its face unreasonable and arbitrary.

5. HIGHWAYS—SERVICE PERFORMED BEFORE CREATION OF DISTRICT.—The fact that a service was performed prior to the creation of a highway district is not a test of the power of the Legislature to impose upon the taxpayers the payment of compensation; if benefits result to the district, the burden of rendering compensation may be imposed upon the district when it comes into existence.

6. HIGHWAYS—IMPROVEMENT DISTRICT—EXPENSES.—Since the preparation of a bill for the creation of a special road improvement district does not result in any benefit to the owners of property within the proposed district, the Legislature cannot impose that expense upon the lands of the district.

7. HIGHWAYS—EXPENSES OF DISSOLVED DISTRICT.—A road improvement district on dissolution was not liable for services of attorneys in connection with the issuance of bonds for the construction of the road rendered before it was determined that the cost of the improvement would not exceed the benefits; such services not being preliminary.

8. HIGHWAYS—DISSOLUTION OF DISTRICTS—LIABILITY FOR MONEY LOANED.—Under Sp. Acts 1921, pp. 902, 1228, repealing acts creating certain special road improvement districts and providing for payment of claims against such districts, claims for money loaned for payment of preliminary expenses should be allowed.

9. HIGHWAYS—LIABILITY OF DISTRICT FOR MONEY BORROWED.—A road improvement district which was dissolved after borrowing money to pay preliminary expenses and using it for that purpose is

liable therefor, even in the absence of express statutory author-
ity to borrow money for such purpose.

10. HIGHWAYS—RIGHT OF DISTRICT ENGINEER TO RECOVER ON QUANTUM
MERUIT.—Where the engineer of a highway improvement dis-
trict was employed to render both preliminary and constructive
services, having no separate contract for the preliminary work,
his compensation for the preliminary services on the dissolution
of the district must be determined on the basis of *quantum
meruit.*

11. APPEAL AND ERROR—CHANCELLOR'S FINDING.—The Supreme Court
will not disturb a chancellor's finding of fact unless it is against
the preponderance of the evidence.

Appeal from Scott Chancery Court; *J. V. Bourland,*
Chancellor; reversed in part.

*Rose, Hemingway, Cantrell & Loughborough* and
*Buzbee, Pugh & Harrison,* for appellants.

1. If the Legislature had the power to authorize
the payment of attorney's fees for the preparation of
the two acts, that has been done. It may enact any
law not forbidden by the Constitution. 112 Ark. 342,
346. It is settled by the decisions of this court that the
Legislature may direct the disposition of the property
of, or impose on, public or *quasi*-public corporations the
payment of claims that they should justly meet. 33 Ark.
497, 500; 73 *Id.* 387, 394; 56 *Id.* 148, 154; 104 *Id.* 270.

In requiring that the districts pay for the service
in drawing the incorporating acts, the Legislature only
conformed to the rule of right that governs private cor
porations, and in doing so exercised the authority which
this court, in the two cases last cited, has held that it
possesses.

The doctrine of the anti-lobbying cases is not con-
trary to the allowance of these claims. Preparing a
bill to be introduced in the Legislature is not lobby-
ing, and payment for such services is held not to be
against public policy, even where there is no statute
which provides for such payment. 2 R. C. L., p. 1021,
par. 122; 24 Atl. 219; 21 Wall. 441; 103 N. W. 1033; 80
Va. 484; 48 Iowa 211.

The courts have not held, nor can they, that anything is against public policy which is expressly authorized by an act of the Legislature, passed within its constitutional powers. 166 U. S. 290; 220 U. S. 20, 49; 133 N. W. 209, 216; 4 H. L. Cas., 122, 123; 92 N. W. 561, 565; 83 N. E. 444, 447; 92 Pac. 524, 526.

2. The claims of James Gould, based upon money loaned to the districts for preliminary expenses should have been allowed. The fact that there was never an assessment of benefits showing that the benefits to the real property in the district were equal to or exceeded the cost of the improvement, did not justify the disallowance of the claims for money advanced for preliminary expenses. *Gould* v. *Toland,* 149 Ark. 476.

3. The fact that there had been no assessment of benefits, etc., did not justify the disallowance of the claims of A. F. Annen for engineering services actually performed in preliminary work for the districts. 115 Ark. 437; 151 Ark. 47; 152 Ark. 302.

The failure to proceed to final approval of the plans and specifications, or even the subsequent rejection of the plans, could not affect Annen's claim for services rendered in making preliminary plans and specifications. The court's finding that bonds were not furnished was without evidence to support it. That matter was not referred to by either party in the evidence. Moreover, the presumption is that the commissioners and the engineer complied with the law.

The contracts were fully recognized by both parties thereto and fully performed up to the point of making payment for services rendered. If there were any irregularities in the contracts, they do not, under the circumstances, affect the liability of the districts. 81 Ark. 80; 91 *Id.* 20; *Id.* 30; 62 Fed. 698; 127 Fed. 521; 67 S. E. 37; 138 U. S. 185; 140 Fed. 225.

*Evans & Evans,* for appellee.

1. The intervening attorneys are not entitled in any view of the case to be compensated for the preparation of these acts. The section of the acts relied upon by

them for such recovery is in violation both of the State and Federal Constitutions. There is nowhere any authority which justifies the levy of an assessment upon the lands of the taxpayers in an improvement district for the purpose of paying an attorney who, voluntarily or otherwise, prepared the bill for an act which was subsequently passed by the Legislature and which created the improvement district. At the moment of its creation such a district is not indebted to anybody for anything. It is strictly a governmental agency for the purpose of effectuating one of the powers of government, and no mortgage can be put upon the lands of the taxpayers by the mere passage of the act creating the district. No antecedent services can form the subject-matter of a charge against the lands of an improvement district after the creation of the district. If the fee to a lawyer for preparing the bill creating the district is not a necessary part of the cost of the improvement contemplated, then the Legislature has no power to impose that burden upon the taxpayers of the district. Art. 2, §§ 8 and 22, State Constitution; 14th Amendment, Federal Constitution; 5th Amendment, *Id;* 89 Ark. 516; 118 *Id.* 294; Page & Jones, Taxation by Assessment, vol. 1, § 15; 147 Ark. 572; 149 *Id.* 476; 107 *Id.* 285; 107 Fed. 827; 111 Mass. 454; 86 Ark. 1; 15 *Id.* 43.

The question as to whether or not an attorney fee should be allowed for examining the record is purely one of fact. If the districts employed the interveners for this work, and if, pursuant to such employment, they did examine and pass upon the records, they should be compensated with a reasonable allowance. We think the chancellor's finding against this claim is supported by a preponderance of the evidence.

2. The court's decree dismissing the claims of Gould for want of equity should be affirmed. He himself testified to a state of facts which made it clear that he did not come into court with clean hands necessary to entitle him to relief in a court of equity.

3. Annen rests his case wholly on his written contracts. He cannot recover. 152 Ark. 302.

McCULLOCH, C. J. Two separate road improvement districts in Scott County were created by statutes enacted by the General Assembly of 1919 (Special Acts 1919, vol. 1, p. 491, vol. 2, p. 2586); one of the said districts being designated as the Albert Pike Road Improvement District and the other designated as the Poteau Valley Road Improvement District of Scott County. The two statutes were identical in form and substance, except as to the references to the respective roads to be improved and the naming of the commissioners.

Powers were conferred upon the commissioners of the respective districts to construct the improvements, to borrow money and to levy and collect assessments upon benefits.

Each of the statutes contained a section which reads as follows: "The board may appoint all necessary agents for carrying on the work and may fix their pay, and shall pay a reasonable fee for the preparation of this act."

A contract was entered into with the engineer, who is one of the appellants in the present case, to do the engineering work, both preliminary and constructive, and other liabilities were incurred, which will be mentioned later in the discussion of the case.

It was determined that the cost of the improvement would exceed the benefits, and separate actions were instituted in the chancery court of Scott County by owners of property in the districts to restrain the commissioners from further proceedings, and during the pendency of these actions the General Assembly of 1921 passed statutes repealing each of the former statutes creating the districts. Special Acts 1921, pp. 902, 1228.

Each of the repealing statutes provided that claims against the district should be filed and adjudicated in the chancery court of Scott County in the cause involving the district, and that assessments should be levied to raise funds to pay the amounts adjudged against the districts.

There has been a joint appeal by several of the claimants whose claims were disallowed by the court, and the question of the correctness of the chancery court's decision in disposing of each of the claims will be now discussed.

The first claim to be discussed in regular order is that of the attorneys who performed services for the districts. These attorneys presented claims against each of the districts containing an item of $250 as a fee for preparing the bill to be introduced in the Legislature for the enactment of the statute, and the further sum of $250 for services subsequently performed in examining the records with a view of approving a bond issue by the district.

We have heretofore decided that the commissioners of improvement districts have no authority to pay for legal services in the preparation or enactment of the statute creating the district. *Thibault* v. *McHaney,* 127 Ark. 1. That decision, however, relates to an instance where the Legislature had not expressly conferred authority to pay for such services, and in the present case we have to deal not with the question of the authority of the commissioners in the absence of a statute attempting to confer the authority, but the question of the power of the Legislature to impose such an expense as a burden upon the taxpayers of the district. There is, however, no question of public policy involved in the point now under discussion, for the services of merely preparing a bill for a legislative enactment is legitimate and is in no sense violative of any rule of public policy; moreover, public policy is what the lawmakers themselves declare it to be. *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90; *United States* v. *Trans-Missouri Freight Assn.,* 166 U. S. 290; *Standard Sanitary Mfg. Co.* v. *United States,* 226 U. S. 20.

It has frequently been said by this court that the only justification for the imposition of special taxation is the fact that special benefits are to be enjoyed. *Kirst* v. *Street Imp. Dist.,* 86 Ark. 1. It is generally a question

for the Legislature to determine whether or not benefits will accrue, and its determination of the question should be respected by the courts unless it is, on its face, unreasonable and arbitrary.

The fact that the service was performed prior to the creation of the district is not necessarily a test of the power of the Legislature to impose upon the taxpayers the payment of compensation, for there might be instances where a direct benefit would result from the performance of services or the furnishing of material before the creation of the district. If benefits may result to the district, then the burden of rendering compensation may be imposed upon the district when it comes into existence. Nor can it be said that services performed in the creation of the district itself will not directly result in benefit to the district after it comes into being, so as to preclude the lawmakers from authorizing compensation to be paid. What we are now called on to decide is whether or not the performance of services in the preparation for the enactment of the statute creating a district can in any sense be regarded as carrying a benefit to the district which is created by the enactment. We hold that in the very nature of things there can be no direct and material benefit accruing from the enactment of the law, for that is purely a legislative function. Benefits may arise under the operation of the law, but there can be none resulting from the enactment of the law itself.

Now, the preparation of a bill is a part of the legislative function. It is true that services may be performed by individuals in no way connected with the legislative branch of government, and the terms of such law may warrant and support a contract between individuals for the performance of such services, but, after all, it is a part of the passage of the statute, and it does not result in any benefits which flow from the operation under authority of the statute. It is unimportant to pursue an inquiry as to who procured the performance of the services, for the effect is the same in any case. Until the

law is passed and the district begins to function under its operation, there is no one in authority to enter into a contract for the performance of such service. One who performs the service is necessarily a volunteer so far as concerns those who subsequently act pursuant to the statute.

The fact that individuals interested in the enactment of such a law are the property owners who were subsequently to enjoy the benefits arising from the improvement, affords no basis for imposing the burden on the property owners of the district as a whole.

In *Thibault* v. *McHaney, supra,* we said that the work of preparing the bill and presenting it to the Legislature and urging it before the committees of that body, as well as services performed in opposition to the effort of taxpayers to secure the dissolution of the district, were services performed for the individuals who were interested in the creation or continuation of the district, and not the district itself. The decision in that case therefore bears out the conclusion which we now reach, that there is no benefit accruing to the property owners of the district from the enactment of the statute, or from any services performed in connection therewith, therefore the Legislature had no power to impose that expense as a burden upon the district.

Now, as to the other item in the claim of the attorneys: It is clear that this service was not performed as preliminary expenses of the district, but as part of the issuance of bonds for the construction of the improvement, which is not service preliminary in its nature. We held in *Thibault* v. *McHaney,* 119 Ark. 188, and in many later cases, that where an improvement district is abandoned or dissolved before it is ascertained that the cost of the improvement will not exceed the benefits, only preliminary expenses can be imposed on the property owners of the district, and that, until there is a determination that the cost will not exceed the benefits, no contract for permanent work can be entered into by the commissioners.

Mr. Rose, one of the attorneys who is a member of the firm of claimants, testified that his examination of the record was for the purpose of passing upon the validity of a bond issue. In response to a cross-interrogatory he said that, "the purpose of our passing upon the record was to prepare the papers for a bond issue." This statement is corroborated by the fact that regular attorneys who resided at the county seat of Scott County were employed by the commissioners of the district as the regular attorneys of the district, and the claimants in this instance were only called in to approve the bond issue. This service was premature, as it was never determined that the cost of the improvement would not exceed the benefits; therefore, under repeated decisions of our court, there was no liability on the part of the district for such service. The court was therefore correct in refusing to allow the claims.

The next claim in order is that of appellant James Gould, who, according to the undisputed evidence, loaned money to each of the districts with which to pay preliminary expenses. The Albert Pike Road Improvement District borrowed $2,000 from Gould and executed a note for that sum, bearing interest at the rate of six per centum per annum, and the Poteau Valley Road Improvement District borrowed from Gould the sum of $1,000 and executed a similar note. These sums, according to the testimony, were borrowed for use in paying the preliminary expenses and were used for that purpose. There is no reason that we can discover why the districts should escape liability for the payment of these debts.

Preliminary expenses are an essential burden upon the property of the districts, even though the effort to construct the improvement turns out to be abortive. The commissioners had the power to provide for the payment of these expenses, and, even in the absence of express statutory authority to borrow money for that purpose, where the money is obtained and used for that purpose

the district is liable therefor. The chancery court erred in refusing to allow these claims against the respective districts.

Finally, we come to consider the remaining claim involved in this appeal, that of A. F. Annen, who was employed by each of the districts as engineer. He entered into a contract for the whole of the services, both preliminary and constructive, but there was no separate contract for making the preliminay surveys and plans. In that respect the case is the same as *Bowman Engineering Co. v. Arkansas-Missouri Highway Dist.*, 151 Ark. 47, and the compensation of appellant Annen must be determined upon the *quantum meruit* rule.

Oral testimony was heard upon this claim, and it is contended by appellant that he was entitled, as compensation for the preliminary work, to two per centum of the estimated cost of the construction of each of the roads. He had previously been paid the sum of $1,000 by the commissioners of one of the districts, and the sum of $300 by the commissioners of the other district. The court found that he was not entitled to any compensation in addition to the amount theretofore allowed and paid by the commissioners.

Appellant testified in detail concerning the work performed by him and what he paid in expenses in doing the work, and his testimony, standing alone, would warrant a decree in his favor for the full amount named in each instance. He introduced three other engineers, who testified as experts in the matter of road engineering, and they corroborated appellant in his statement that two per centum of the estimated cost of the improvement would be a reasonable compensation for preliminary work up to the point of letting the contract for the construction of the improvement. Neither of these witnesses, however, testified as to any knowledge of the particular work done by appellant, or even any knowledge of this particular locality in which the work was done.

Neither of the witnesses says anything about having examined the plans made by appellant.

The commissioners introduced a witness, Mr. Winters, who is an engineer engaged in road work and residing at Fort Smith, and, according to his testimony, the work done by appellant is absolutely valueless. Winters testified, in substance, that he had carefully examined the plans and profiles prepared by appellant, and that they contained nothing except a center line and right-of-way and profile with the grade lines, and, in a few instances, other features along the right-of-way; that there was no notation of the height of culverts, and there was no showing on the plans as to fences, telephone poles, location of old roads, streams or other features; that the curves were not shown, as required, in order to conform to plans for Federal aid, and that the rate of grades shown on the profiles was in many instances too steep and considerably in excess of the limits set by the Federal engineers. He also stated that he found that the length of steel bridges was estimated without reference to the area drained by the streams, and that they differed from the government geographical survey maps. Many other reasons are given by Winters as to why the plans furnished by appellant are worthless.

So far as this feature of the case is concerned, there is no testimony except that of Winters and the appellant; and while it is directly in conflict, we cannot say that the chancellor erred in accepting the testimony of Winters rather than that of appellant himself. If the testimony of Winters is correct, then appellant was not entitled to any compensation for making the survey and plans that were so defective and inapplicable that they were of no value.

We should not disturb the decree unless it is found to be against the preponderance of the evidence, and we cannot say, in the present state of the record, that there is a preponderance against the finding of the chancellor on the issue as to the value of appellant's services.

The decree is therefore reversed as to appellant James Gould, and the cause remanded, with directions to enter a decree in his favor in accordance with this opinion. In all other respects the decree is affirmed.