PAGE *v.* McKINLEY.

4-5151

Opinion delivered May 30, 1938.

*Jack Holt,* Attorney General, and *Leffel Gentry,* Assistant, for appellants.

*G. B. Oliver, Jr., Ed I. McKinley, Jr.,* and *John R. Thompson,* for appellees.

McHaney, J.  Appellees, Ed I. McKinley, Jr., and G. B. Oliver, Jr., brought this action against Earl Page, as Treasurer of the State of Arkansas, the State Auditor, the Secretary of the Arkansas Corporation Commission, and a great number of county assessors and clerks of this state, alleging that on or about the 15th day of January, 1937, they entered into an agreement with B. A. Fletcher and E. L. Mizell who were duly authorized to contract on behalf of said assessors and clerks, for the purpose of securing the passage of an appropriation bill to pay said assessors and clerks certain back pay, which it was claimed the state owed them.  Said contract will hereinafter be set out more in detail.  It was further alleged that it was the intention of all parties that any amount recovered for said assessors and clerks in excess of 70 per cent. of the amounts mentioned in their contract should be and was by said contract assigned to them. The complaint sets out the amount recovered for each assessor and clerk and the amount claimed by appellees as due them, which is 30 per cent. of the amount recovered.  It is alleged that 60 per cent. of the amount recovered was paid to the assessors and clerks by proper warrants on or about December 13, 1937, and that on or about March 2, 1938, the State Auditor issued his warrants, which were approved by the Secretary of the Corporation Commission, payable to the assessors and clerks for the remaining 40 per cent. of the amounts due them, which warrants were delivered to the assessors and clerks in error on the part of said secretary and said auditor, because of the above mentioned assignments, which were in the hands of the State Auditor when he issued the warrants above mentioned.  The complaint then sets out the amount due each assessor and clerk and the amount due appellees from each of them.  The complaint then alleges the services rendered under the contract above mentioned including the searching of sources of income to the state to find a source from which revenue might be obtained by legislative enactment to pay said amounts, and that they finally discovered a source of revenue for said purpose; that they began the search of authorities and

drew up a bill to be presented to the legislature, got it introduced, appeared before numerous committee meetings of the legislature, explained the source of revenue and the effect of the payment of the amount due said assessors and clerks upon the revenue of the state, and that as a result of their efforts and labors, a proper bill for the payment of the back salaries was prepared and became a law and the warrants above set forth were issued. It is further alleged that said assessors and clerks are insolvent, and that they have indicated that they are going to breach their contract, and that if the warrants above mentioned, which were issued to the assessors and clerks in payment of the money which was assigned by them to appellees, are paid by the State Treasurer, they will be without a remedy to collect the money due them, and that this action avoids a multiplicity of lawsuits by joining all proper parties in one suit. The prayer was that the warrants issued on March 2, 1938, for the 40 per cent. as above stated, be canceled and held for naught and that the State Treasurer be enjoined from paying said warrants pending the final hearing of said complaint and upon final hearing, that it be made permanent; that said assessors and clerks or their assigns be required to deposit said warrants with the registry of this court to be returned to the Auditor of the State, and that the Secretary of the Corporation Commission and the Auditor of the State be required to re-issue said warrants by issuing to appellees the amount set out above as being 30 per cent. of the amounts recovered by the assessors and clerks, and the balance be issued to them. The contract above mentioned is shown by exhibits "A" and "B," which are as follows:

"Exhibit A

"Whereas, we, the undersigned, Burrell A. Fletcher and E. L. Mizell, have been duly named a committee to represent county assessors in this state desiring to push a claim for back salary due them from the state; and

"Whereas, said assessors have duly contracted with us and empowered us to take steps as may be necessary in the effort to collect said claims, and have authorized

us to incur such expenses as may be necessary, provided such expenses do not exceed thirty per cent. (30%) of the amount recovered, it being understood that, in any event, each assessor and clerk is to receive seventy per cent. (70%) of his proper claim.

"Now, therefore, in consideration of the authority vested in us, we hereby employ and contract with the law firm of Ed I. McKinley, Jr., and G. B. Oliver, Jr., of Little Rock, Arkansas, to represent us in the prosecution of said claims.

"It is further agreed that each contract received by us is to be assigned to and delivered to the attorneys herein mentioned and that, by such assignment, a lien for the fee to be paid is thereby created in favor of said attorneys.

"And, in consideration of their service, we agree that they shall be paid as compensation therefor the sum of thirty (30)% of the amount recovered.

"In testimony whereof, we have hereunto set our hands and seals this day of 1937."

"Exhibit B

"Whereas, the general assembly of the state of Arkansas for 1933 appropriated the sum which was sufficient to pay only one-half of the state's portion of the salaries and emoluments of the tax assessors of the respective counties of the state, and,

"Whereas, the said tax assessors and clerks of the respective counties should recover the balance due them, and such recovery can be accomplished only through legislative act of the general assembly of 1937, and,

"Whereas, the assistance of the respective tax assessors and clerks must be secured and, in order to secure such, it will be necessary to incur expenses; and, further the proper presentation to the legislature will require the time of a committee in Little Rock, and in addition to their expenses incident to render such service, it will be necessary to secure legal advice and assistance in preparation and presentation of necessary bill or bills,

"Now, therefore, in consideration of such, I, the undersigned tax assessor or clerk of.............................county,

do hereby authorize and constitute Burrell Fletcher, of Lonoke county, and E. L. Mizell, of Clay county, as a committee to act for me and in my behalf in presenting my claim for back salary as such tax assessor or clerk to the legislature, and I hereby expressly authorize and contract with said committee that they may incur any proper expenses incident thereto, and contract for legal services up to and including the sum of 30 per cent. of the amount so recovered, but it is expressly understood and agreed that I am to receive at least 70 per cent. net of the amount due me, which amount I certify to be the sum of $................................;

"I further agree that the voucher or warrant for any amount so recovered shall be held by the Auditor of State, and by this instrument I hereby direct said Auditor of State to hold such voucher or warrant, same to be delivered only to me and the members of the Committee herein designated by them, and presented by us to the Treasurer of State for payment.

"In testimony whereof, I have hereunto set my hand this ........................ day of 1937."

The complaint was filed on March 3, 1938, and on the same day, the court granted a temporary order enjoining the treasurer from paying the warrants issued to said assessors and clerks until a further order of the court. On March 4, the appellant, Earl Page, State Treasurer, moved the court to dissolve the temporary injunction theretofore granted on the ground that the suit is in effect one against the state. On April 9, 1938, a decree was entered reciting that there was presented to the court the motion of the State Treasurer, the State Auditor, and the Secretary of the Corporation Commission to dissolve the temporary injunction theretofore issued in the cause, which motion was by the court denied, and the case is here on appeal.

Appellees have moved to dismiss this appeal on the ground, first, that there was no final order from which an appeal would lie, and second, because the transcript was not filed in this court within the time provided by law. We cannot agree with appellees in either contention.

Act 355 of the Acts of 1937, now § 7507 of Pope's Digest, provides to the contrary. It provides that an appeal may be taken where the circuit or chancery court or a judge thereof in vacation refuses an application to dissolve or modify an injunction, among other things. This act is specific authority for the right to appeal from an order refusing to dissolve an injunction. As to whether the transcript was filed in time, the act provides: "The transcript shall be filed with the clerk of the Supreme Court within thirty days from the entry of such order or decree, and the appeal shall take precedence in the Supreme Court." The appeal is not from the restraining order granted on March 3, but is from the order refusing to dissolve the restraining order, which was made on April 9, and the transcript was lodged in this court on the same date. Therefore, the appeal was filed within apt time.

It is well settled, as stated in 59 C. J., p. 307, "that the question of whether a particular suit is one against the state is not to be determined solely by reference to the nominal parties to the record, and the fact that the state is not named as a party defendant does not conclusively establish that the suit is not within the rule prohibiting suits against the sovereign without its consent." In § 464, same volume, it is said: "While a suit against state officials or agencies is not necessarily a suit against the state, the general rule that a state cannot be sued without its consent cannot be evaded by making an action nominally one against the servants or agents of a state when the real claim is against the state itself, and it is the party vitally interested. Accordingly it is well settled, as a general proposition, that, where a suit is brought against an officer or agency with relation to some matter in which defendant represents the state in action and liability, and the state, while not a party to the record, is the real party against which relief is sought so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the state, will operate to control the action of the state or subject it to liability, the suit is in effect

one against the state and cannot be maintained without its consent. . . ."

We agree with appellant that this is necessarily a suit against the state and cannot be maintained. Appellees contend with much force that it is merely a suit against the officers of the state and does not seek to subject the state to any actual liability; that the state cannot lose anything by this action, and that it should not be heard to object that the money which it owes to the assessors and clerks should be impounded and subjected to the claim of creditors of these persons. Nevertheless, the subject-matter of this action is the property of the state. It is the money of the state, held in its treasury, and which it is seeking to pay to its officers for services rendered by them, and which they were required to render as such officers, and is being paid pursuant to an appropriation for the purpose. It is an attempt to take from the state the control and disposition of its money, to impound it in the registry of the court and to pay it out according to the order of the court. Not only does the complaint seek to impound the warrants which the Auditor of State has issued to various assessors and clerks, but it seeks to compel the auditor to issue new warrants, and to issue new warrants to appellees for a portion of the amounts already covered for the amounts outstanding which is undoubtedly a suit against the state. *Pitcock* v. *State*, 91 Ark. 527, 121 S. W. 742, 134 Am. St. Rep. 88; *Jobe* v. *Urquhart*, 102 Ark. 470, 143 S. W. 121, Ann. Cas. 1914A, 351; *Caldwell* v. *Donaghey*, 108 Ark. 60, 156 S. W. 839, 45 L. R. A., N. S. 121, Ann. Cas. 1915B, 133; *Refunding Board* v. *National Ref. Co.*, 191 Ark. 1080, 89 S. W. 2d 917; *Democrat P. & L. Co.* v. *Parker*, 192 Ark. 989, 96 S. W. 2d 16.

The injunction issued is in effect an equitable garnishment against the State Treasurer. If appellees can maintain such an action, then any creditor of any employee of the state, to whom the state owes money, could enjoin the state from paying its employee so that such person might collect his debt, and might open the way to an intolerable situation whereby the State Treasurer

might be required to defend similar suits in numerous instances. We, therefore, hold that this is a suit against the state and that the public officers of the state cannot be compelled to answer such litigation.

The action in this case cannot be maintained for another reason. The contract on which it is based is void as being against public policy. It was so held in *Miller County Highway & Bridge District* v. *Cook,* 134 Ark. 328, 204, S. W. 420. In that case, Cook was a landowner in the district and he brought that action against the commissioners of the district and various other persons to recover illegal payments made by the commissioners for expenses incurred by these persons, in the employment of an attorney to institute suit against the district to test the constitutionality of the act creating it, for expenses for railroad fare, hotel bill, and other incidental items in making a trip from Texarkana to Little Rock, for clerk hire, stenographic hire, and telegraph and telephone bills in securing the passage of the act creating the district. A recovery was had against these parties who had received these payments and, on appeal to this court, that judgment was affirmed, even though the Legislature had, at a subsequent session, passed an act ratifying all of the actions of the board of commissioners of the district in the premises. In that case the court cited *Buchanan* v. *Farmer,* 122 Ark. 562, 184 S. W. 33, where it was said: "In *Harris* v. *Roof's Excrs.,* 10 Barb. (N. Y.) 489, the court held that no action will lie for services as a lobby agent in attending to a claim against the state before the Legislature, and that agreements in respect to such services are against public policy, and are prejudicial to sound legislation. To the same effect are *Trist* v. *Child,* 21 Wall. 441, 22 L. Ed. 623; *Rose* v. *Truax,* 21 Barb. (N. Y.) 361; *Clippinger* v. *Hepbaugh,* 5 Watts & S. (Pa.) 315, 40 Am. Dec. 519." See, also, *Thibault* v. *McHaney,* 127 Ark. 1, 192 S. W. 183; *Gould* v. *Sanford,* 155 Ark. 304, 244 S. W. 433; *Martin* v. *Street Imp. District No. 349,* 178 Ark. 588, 11 S. W. 2d 469. In 13 C. J., p. 430, § 368, it is said: "It follows from what has been said above that all agreements whose object or tendency is in any way to interfere with, or unduly influence, legislative action,

either by congress, by a state legislature, or by a municipal council or other like body, are contrary to public policy and void. The most common of these are what are known as 'lobbying contracts,' that is, agreements to use personal influence, importunity, bribery, or corruption to obtain or prevent legislation.''

Appellees' contract was one on a contingent basis. In other words, before they could recover anything, they must secure the passage of an act of the Legislature appropriating money to pay the assessors and clerks, and no matter how honest and upright their motives were in so doing, such contract cannot be sustained as the least that can be said of it is that it tends to unduly influence legislative action.

We are, therefore, of the opinion that the court erred in entertaining jurisdiction of this cause and that it should have quashed the temporary restraining order issued on the motion of appellants so to do. The judgment is, therefore, reversed, and the cause dismissed.