PAVING DISTRICT NO. 5 OF FORT SMITH v. FERNANDEZ.

Opinion delivered January 26, 1920.

1. MUNICIPAL CORPORATIONS—PAVING DISTRICT—DIVERSION OF FUNDS.—Act April 1, 1919 (Acts 1919, page 767), authorizing use of surplus funds of a paving district collected for the purpose of constructing a pavement to be used for the purpose of making repairs, *held* unconstitutional as authorizing a diversion of such funds.

2. APPEAL AND ERROR—APPOINTMENT OF RECEIVER—DISCRETION.—In appointing a receiver under Kirby's Digest, section 6342, the chancery court exercises a discretion which will not be overturned by the Supreme Court on appeal, in the absence of a showing of abuse.

3. MUNICIPAL CORPORATIONS — PAVING DISTRICT — REMOVAL OF COMMISSIONERS.—Though the commissioners of a paving district assented to the passage of an unconstitutional act authorizing

an improper diversion of the district's funds, the chancery court erred in removing the commissioners from office and in appointing a receiver to take charge of the district, since the commissioners were subject to the court's orders, and no fraud or wilful misconduct on their part is alleged or proved.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

*A. A. McDonald,* for appellants.

1. The court had no authority to appoint the receiver to take charge of the funds, books, papers, etc., at an enormous expense, when the commissioners and the secretary were ready and willing to perform all those duties without additional expense. Act 579 was not unconstitutional and void, and the decree is against the clear preponderance of the evidence. Am. & Eng. Enc. Law (2 Ed.) vol. 23, div. 3, p. 1002, and cases cited; 28 Ark. 48; 20 *Id.* 325; 23 A. & E. Enc. Law, par. 10, p. 1011, etc.; 129 N. Y. 288-297. The chancellor's findings are erroneous, and the court costs should not have been taxed against the fund but against appellee. 89 S. W. 316; 76 Ark. 501; 95 *Id.* 389; 130 S. W. 574.

2. As to the unconstitutionality of the act, see 103 Ark. 529; 146 S. W. 105; 103 Ark. 529; 104 Ark. 270; 56 *Id.* 148.

3. The court had jurisdiction and had the power and authority to direct the distribution of the fund. 209 S. W. 526; 136 *Id.* 597; 150 *Id.* 154. The demurrer should have been sustained, as the complaint did not state facts sufficient to state a cause of action. The allegation as to trust funds is too indefinite. 90 Ark. 29; 117 S. W. 1073. The decree should be reversed and the commissioners directed to distribute the fund according to law.

*Covington & Grant,* for appellee.

1. The court had authority to appoint a receiver to wind up the affairs of the district. Kirby's Digest, § 6342; 34 Cyc. 18-19, 61. It took jurisdiction and should retain it to completely adjust the rights of all parties. 92 Ark. 15.

2. The act is unconstitutional. An excessive amount was collected under an erroneous assessment. 32 Ark. 496. The money belonged to the parties who paid it. The act violates article 19, section 27, Constitution. 109 Ark. 93; 123 *Id.* 330-1; 125 *Id.* 60.

The findings and decree are right and should be affirmed.

SMITH, J. The appellee, Fernandez, is a citizen and taxpayer of Fort Smith, and owned real estate in Paving District No. 5 in that city. This was an improvement district organized for the purpose of paving certain streets in that city, and assessments were made against the lands lying therein for the purpose of raising funds with which to pay for paving the streets in the improvement district. The assessments were levied annually for several years, and when the last assessment had been collected there remained in the hands of the commissioners a surplus of about $22,000 after all cost of the improvement had been paid. Appellee had paid all the assessments levied against his property from the time the district was created, including the last assessments, whereupon he brought this suit against the mayor and commissioners of the city of Fort Smith, who, under the act under which Fort Smith adopted the commission form of government, were successors to the commissioners of the improvement district, for the purpose of having the surplus distributed among the property owners who had paid taxes.

A demurrer to the complaint was overruled, whereupon an answer was filed by the mayor and city commissioners, in which they alleged they were the legal successors of the commissioners of the original improvement district, and admitted that the improvement contemplated upon the original organization of the district had been completed, but alleged the fact to be that all the affairs of the district could not be wound up until all outstanding assessments had been collected, as it could not be known prior to that time the sum to be divided

among the taxpayers. That no provision had been made on the organization of the district for the maintenance of the pavements and that many of the streets were in bad repair and some of them almost impassable. That the city had no funds with which to repair the streets, and that necessary repair work could be done only by forming a new improvement district for that purpose or by using the surplus funds of the original district, and that an act had been passed by the General Assembly (approved April 1, 1919) authorizing the use of this surplus for the purpose of making these repairs.

The answer tendered to the court an offer of a full statement of the district's finances, together with a statement of the delinquent taxes unpaid. The answer avowed the purpose to use the surplus as directed in the special act of the General Assembly, unless the court should hold that, for any reason, the act did not confer that authority, in which event they prayed directions from the court in regard to the distribution of this surplus.

The court sustained a demurrer to that portion of the answer which recited the authority claimed under the special act of the General Assembly, holding it unconstitutional and void, and appointed a receiver to take charge of the funds of the district. The court held that, "Neither the said commissioners nor the said district have authority as such, nor can they derive authority from any order of the chancery court, to hold, handle or dispose of said funds unless the chancery court should deem it proper to constitute the *personnel* of said commissioners its own receiver under the qualification and affidavit and bond as required by law, and the court declines to appoint them receivers, because their attitude in this action is one of hostility in law to equitably return said money to its owners, but more particularly because they are defendants in the action, and further because the court wanted J. R. Chandler, the county treasurer of Sebastian County, as such receiver, relying upon and trusting his honesty, qualifications and integrity."

The court apparently based its finding "of hostility in law to equitably return said money to its owners" upon the finding, also recited in the decree, that defendants had not applied to the chancery court for directions in regard to the disbursement of the funds in their hands, but had consented to and approved the introduction of the special act above referred to, as the decree also contained the finding that "the said commissioners and their predecessors had managed the affairs of said paving district in a business-like manner, free from fraud, and had sometimes theretofore consulted together to know what was the best to do with said money, and, being so advised, had contemplated filing a bill in equity for instructions, but that they abandoned that resolution, and consented to and approved the introduction of the special act of the Legislature of 1919, which was accordingly done."

The receiver qualified and attempted to take charge of the fund, but defendants refused to turn it over, whereupon a citation for contempt issued, in response to which the defendants replied that they held the funds subject to the order of the court, and would pay them over as directed, and specifically disclaimed any intention to refuse to execute any order which the court might make, but recited that they desired to be heard in opposition to the court's order in regard to the appointment of a receiver, as they were advised that that action was unauthorized by law. Upon the court's direction they then turned the money over to the receiver.

Pursuant to the directions of the court, the receiver caused an audit to be made of the affairs of the district, employing expert accountants for that purpose, which audit was embraced in the report of the receiver. The court approved this report and ordered that "the whole sum of money now in the hands of said receiver and any that shall hereafter be collected by him be paid and distributed to the several land owners in such a just and equitable proportion to each as the court may hereafter find and declare," and this appeal has been duly prosecuted from that order.

The majority of the court are of the opinion that the special act of the General Assembly is unconstitutional, as authorizing a diversion of funds collected for one purpose to be appropriated to another use, as an improvement district organized to construct streets has no authority to use funds collected for that purpose to thereafter appropriate any portion thereof for purposes of repair, and the special act did not confer that authority because it was not based upon the consent of the taxpayers of the city, as required by the Constitution. In other words, to create an improvement district for the purpose of building or repairing streets in a city, the consent of the taxpayers must first be obtained in the manner provided by law and the authority conferred by the original petition under which the district was formed could not be subsequently enlarged by legislative enactment, to which the taxpayers had not consented.

But we are all agreed that the court erred in displacing appellants, and in appointing a receiver to take charge of the affairs of the district. It may be conceded that the testimony supports the finding made by the court below that appellants had abandoned their resolution to ask advice of the chancery court, and did in fact assent to the introduction and passage of the special act, and, but for the interposition of the chancery court, would have disbursed the fund as authorized by said act. But they were, nevertheless, under the law, the commissioners of the district, and, as such, were the officers designated by law to manage its affairs. The court was in error in assuming that the commissioners could be made subject to its orders, only by being appointed receivers of the court. On the contrary, they were subject to its orders as commissioners, and if they were about to make unauthorized or unlawful use of the district's funds—as the court found—that action could have been prevented by appropriate orders of the court, and should have been prevented in that manner. In other words, the commissioners, as such, were as much amenable to the appropriate orders of the court as its receiver would have

been; and we think there was neither authority, nor necessity, for the removal of the commissioners and the appointment of a receiver.

What we have just said is not in derogation of the right of the court to make appropriate orders, *in limine,* to prevent waste. Upon the contrary, the court has that right; but that right should have been exercised here by appropriate orders directed to the commissioners themselves, without displacing them.

It is provided by statute that whenever it shall not be forbidden by law and shall be deemed fair and proper in any case in equity, the court, judge or chancellor shall appoint some prudent person as receiver, who shall take an oath faithfully, impartially, diligently and truly to execute the trust reposed in him. Section 6342, Kirby's Digest. And the court making this appointment must necessarily exercise a discretion, which will not be overturned by this court on appeal unless there appears to have been an abuse of that discretion; and this is especially true with reference to a decision by us of a controversy over the naming of a receiver, and learned counsel for appellee insist that the question of who should have been appointed receiver is the real question in the case, as they insist that the services of a receiver had become indispensable under the pleadings and testimony in the case.

We think, however, that the question is not who should have been appointed receiver, but, rather, did the court err in removing the commissioners?

In 23 A. & E. Enc. of Law (2 Ed.), 1011, the law is announced as follows: "It may be stated as an undoubted general rule in this connection that a court of equity is reluctant to disturb the possession or control of a lawfully constituted trustee, and to supersede such authority by the appointment of a receiver. A trustee will not be displaced and a receiver appointed on slight or insignificant grounds. Thus it has been said that a court would not, at the instance of one of several parties interested in an estate, displace a competent trustee, or take

the possession from him, unless he wilfully, or ignorantly permitted the property to be placed in a state of insecurity which due care or conduct would have prevented. And it would require a particularly strong case, it has been held, to warrant the appointment of a receiver of an internal improvement fund, created by the Legislature and vested in the governor and other State officers as trustees."

On the following page the text continues: "Notwithstanding the reluctance of a court to supersede a trustee by the appointment of a receiver, if it appears that the trustee has been guilty of positive misconduct or waste, or an improper disposition of the trust estate, or that he has an undue bias towards one of two conflicting parties, or that the estate is liable to be wasted or destroyed, a proper case is made out for the appointment of a receiver."

To the same effect see section 1510, Pomeroy's Equity Jurisprudence, vol. 4 (4 Ed.); section 696, High on Receivers (4 Ed.). If this be the test as to ordinary trustees, how much stronger must be the showing required to remove from office persons who have a legal title to the office whose functions they are undertaking to perform; and, if it be conceded that the chancery court has the right, upon a proper showing, to remove such officers (which we do not decide), it must at least be said that such a case has not been made here.

No fraud or wilful misconduct is alleged or shown, nor does it appear that the commissioners were incapacitated or unwilling to execute the orders of the court, and we conclude, therefore, that the control and management of the affairs of the district should not, therefore, have been taken out of their hands, and for the error in doing so the decree of the court below is reversed and the cause remanded with directions to restore the fund to appellants.

HUMPHREYS, J., not participating.