HOUSE v. ROAD IMPROVEMENT DISTRICT No. 5.

Opinion delivered April 16, 1923.

1. HIGHWAYS—ROAD IMPROVEMENT DISTRICT—EXCLUSION OF BENE-FITED LAND.—Where a special act creating a road improvement district authorized the county court to extend the boundaries of the district so as to include any lands benefited by the improvement, the effect was to preserve the validity of the act in case a demonstrable mistake was made by the Legislature in establishing the boundary lines, in which case the remedy of the property owners was not to impeach the validity of the district on account of the exclusion of benefited lands, but to move the inclusion of them.

2. HIGHWAYS—ROAD IMPROVEMENT DISTRICT—VALIDITY OF SPECIAL ACT.—Where a special act created four road improvement districts in a county and apportioned the lands of the county to the districts, and nothing in the act creating the district, and no fact of which the court takes judicial knowledge, shows a demonstrable mistake or arbitrary action in excluding lands from any particular district, the act will be upheld.

3. HIGHWAYS—ROAD IMPROVEMENT DISTRICTS—TERMINI AND BOUND-ARIES.—Improved roads must necessarily have *termini*, and improvement districts must have boundaries.

4. HIGHWAYS—ROAD IMPROVEMENT DISTRICT.—The rule that the inclusion of lands entirely separated from the road to be improved by impassable obstructions or barriers renders the act creating the road district void, has no application where appellant's lands were separated by a small creek and cypress brake, of which the court takes no judicial notice.

5. HIGHWAYS—ACT CREATING ROAD DISTRICT—VALIDITY.—The creation by statute of a road improvement district as a public agency for the construction of a proposed road improvement, is a legislative and not a judicial proceeding, and does not present a judicial question, further than the determination whether the statute is a valid enactment, which must be determined from the face of the statute or from matters of which the court may take notice.

6. HIGHWAYS—ABANDONMENT OF LATERAL.—The finding of the chancellor that the commissioners of a road improvement district had not abandoned the construction of a lateral road which was an essential element of the improvement designated by the Legislature, *held* sustained by the evidence.

Appeal from Conway Chancery Court; *W. E. Atkinson*, Chancellor; affirmed.

*Hill & Fitzhugh,* for appellants.

Abandonment of the Shaw's Bridge lateral, 8 miles in length, defeats the assessment. 105 Ark. 487; 134 Ark. 292; 142 Ark. 1. Exclusion of lands benefited renders district void. Case is controlled by the decision in 145 Ark. 49, which affirms principles announced in 130 Ark. 70, and 139 Ark. 574; 145 Ark. 288. District arbitrarily created. 240 U. S. 55; 249 U. S. 63. No benefits received. 83 Ark. 54. If court has held that where the evidence indisputably shows no benefits have been or can be received, the owner must show this within the 20 days allowed for making complaints, then it has overruled the principle announced in 81 Ark. 562; 141 Ark. 247; 239 U. S. 478; 145 Ark. 51. Levy excessive and void. Material changes made invalidate the assessment. 137 Ark. 354; 135 Ark. 4; 142 Ark. 509; 137 Ark. 177; 123 Ark. 205.

*J. W. Johnson* and *Strait & Strait,* for appellees.

Evidence does not show Shaw's Bridge lateral abandoned, but to the contrary. No exclusion of lands benefited from the district. Case of *Ruddell* v. *Rutherford,* 145 Ark. 49, and cases cited, are not in point and have no application here. It is the exemption of lands benefited that invalidates district. 140 Ark. 479; 139 Ark. 347. Authorities already cited answer the contention that the district was arbitrarily created. 133 Ark. 119; 100 Ark. 366; 108 Ark. 419; 83 Ark. 344; 98 Ark. 113; 146 Ark. 289, in conclusive on this point. See also 140 Ark. 115; 144 Ark. 301; 142 Ark. 52; 142 Ark. 73; 139 Ark. 153; 139 Ark. 341; 138 Ark. 549. Act also authorizes lands outside boundaries to be included when benefited. Sec. 17. Claim of no benefits received without merit. 139 Ark. 322; 142 Ark. 13; 98 Ark. 543. Notice was given and was sufficient. 139 Ark. 277; 139 Ark. 341; 139 Ark. 153; 103 Ark. 461; 147 Ark. 362; 147 Ark. 449; 141 Ark. 254; 98 Ark. 543. Zone system of assessment not invalid. Too late to complain assessments made on wrong basis. *Id.* Levy not excessive and void. 147 Ark. 249.

*Hill & Fitzhugh,* in reply.

Testimony reargued and authorities cited by appellees reviewed. Payment under protest. 107 Ark. 204. No attack can be made on validity of assessment in action to collect delinquent tax.

HUMPHREYS, J.  Appellant instituted this suit in the chancery court of Conway County against appellees, attacking the validity of Road Improvement District No. 5 of Conway County and the assessments of benefits against appellant's lands embraced within the district. The district was created, along with other districts in said county, by special act No. 245 of the Legislature of 1919. The first ground upon which the validity of the act itself is assailed is that the notice to the property owners whose lands were included in the district provided for in the act was not sufficient as to time, or upon its face, to apprise property owners of the burdens about to be laid upon their lands, and was a taking of appellant's property included in the district without due process of law. This identical point was involved and determined adversely to the contention of appellant in her attack upon Road Improvement District No. 2 of Conway County, which is a companion case to this in many respects. We deem it unnecessary to reiterate what was said in that case bearing upon this point. The second ground of attack upon the validity of the district is that it was arbitrarily created by the Legislature, as evidenced, first, by the alleged exclusion of benefited lands from the district, and second, by the alleged inclusion of appellant's unbenefited lands in the district.

(1)  The district, for the greater length thereof, is between seven and nine miles in width. It is about twenty miles in length. Plumerville is situated in the southwestern corner of the district, and, generally speaking, the district lies toward the northeast from Plumerville, and includes the town of Springfield, situated eleven miles northeast of said town. The main road of the district runs due north from Plumerville for a distance of three miles, where it turns toward the

northeast, running through Springfield and to the eastern boundary line of said district. A prong of the road also runs due north out of Springfield to the northern boundary line thereof. About three miles north of Plumerville a lateral runs in an easterly direction to the east boundary line of the district. From this description it will be readily seen that the boundary lines of the district immediately south and west of ·Plumerville are much nearer the main improved road than the east boundary line. It necessarily follows that the lands adjoining the district south and west of Plumerville are nearer to the main improved road than some of the lands east and southeast of Plumerville which were included in the district. Appellant makes the argument that, because lands west and south of the district are nearer the main improvement than lands east and southeast thereof, which were included in the district, the district was arbitrarily created, and therefore void. There are several reasons why this is not so.

In the first place, section 17 of the act creating the district authorized the county court, upon notice and hearing, to extend the boundaries of the district so as to include any lands benefited by the improvement. The purpose of including a flexible provision of this kind in the act was to preserve its validity in case a demonstrable mistake was made by the Legislature in establishing the boundary lines so as to exclude lands benefited by the improvement. The remedy of the property owners was not to impeach the validity of the district on account of exclusion of benefited lands, but to move the inclusion of them.

Again, there is nothing in the act creating the district, or any fact of which the court will take judicial notice, showing a demonstrable mistake or arbitrary action on the part of the Legislature, in excluding lands from the district. The act itself included the other lands excluded from District No. 5, of which complaint is made, in other improvement districts, and from aught that appears, under the general system of improvement,

may have equitably apportioned the lands to the particular district in which they would receive local and peculiar benefits on account of trade relationships, markets, etc.

And again, this court is firmly committed to the doctrine that improved roads must necessarily have *termini,* and improvement districts boundaries. *Hill* v. *Echols,* 140 Ark. 479; *Tatum* v. *Wallace,* 146 Ark. 289.

(2)   The south boundary line of said District No. 5 is the south line of sections 19, 20, 21, 22, 23, and 24 in tp. 6 N., range 15 W., in Conway County. A part of appellant's lands were located in section 21 in said district. Appellant alleged and made proof that, on account of Gap Creek and cypress brakes, the only practical route from said lands in section 21 to the improved roads in said district is to cross the south boundary line thereof and pass over lands not included in the district, and a part of which was nearer the improved road than appellant's lands. Appellant argues that this situation invalidates the act creating the district under the rule announced in *Heinemann* v. *Sweatt,* 130 Ark. 70, and subsequently approved in *Milwee* v. *Tribble,* 139 Ark. 574; *Johns* v. *Road Imp. Dist.,* 142 Ark. 73, and *Ruddell* v. *Rutherford,* 145 Ark. 49. The rule announced in those cases is that when it appears, from the face of the act creating an improvement district, or from conditions or situations of which the court will take judicial knowledge, that lands of complaining owners are entirely separated from the roads to be improved by intervening lands excluded from the district, or by impassable obstructions or barriers, the inclusion of the lands thus separated renders the act void because arbitrary and discriminatory. In the instant case neither the act itself, nor any *impassé* of which this court will take judicial notice, separates appellant's lands in section 21 from the improved roads in the district. On the contrary, none of the lands embraced in the district, according to the face of the act and such facts as this court judicially knows, are separated from the

improved roads by an *impassé* or intervening excluded lands. The Ruddell case, *supra,* which, learned counsel so earnestly insist, controls the case at bar, is not applicable because the *impassé* in that case was an island and navigable stream, of which this court took judicial notice. The only obstructions between appellant's lands in section 21 and the improved roads in said district are a small creek and cypress brakes, of which this court takes no judicial notice.

The statute itself does not impose any burden on the lands included, but merely creates the district and fixes the boundaries. Adequate methods are provided for the ascertainment of actual benefits and burden of assessments, and the owners of property are given an opportunity to be heard, which constitutes due process of law. The mere creation by the statute of the district as a public agency for the construction of a proposed improvement is a legislative, not a judicial, proceeding and does not present a judicial question, further than the determination whether the statute is a valid enactment, and this must be determined from the face of the statute and matters of which the court may take notice. *Greene County* v. *Clay County,* 135 Ark. 301. Hence the facts upon which the Legislature is presumed to have based its determination as to the wisdom and propriety of the enactment cannot be reviewed by the courts. The federal cases, on which learned counsel for appellant rely, recognize this distinction. *Houck* v. *Little River Drainage Dist.,* 239 U. S. 254; *Myles Salt Co.* v. *Iberia Dist.,* 239 U. S. 478.

In the Houck case the court said: "Whether the expense of ascertaining the best method of reclamation should subsequently be reimbursed when final assessments were laid according to benefits ascertained to result from the execution of the final plan presents a question of policy, and not of power. These outlays for organization and preliminary surveys could as well be considered specially to concern the district, as constituted, as highways or public buildings or plans for the same

(whether consummated or abandoned) could be said to concern counties or towns. Further, it would seem to be clear that the State could appropriately provide for meeting the preliminary expense when it was incurred and could determine the manner of apportionment according to the interests deemed to be affected as they existed at the time. And in this view it is not material to consider whether the area of the district might subsequently be extended, or what particular lands within it would be appropriated for ditches, reservoirs, etc., if a plan of drainage were adopted and carried out. To say that the tax could not be laid except as a result of such an inquiry would be to assert in effect that as a preliminary tax it could not be laid at all. We know of no such limitation upon the State power.''

The validity of the assessment of benefits against appellant's lands embraced within the district and the right to collect same are assailed upon a number of grounds, all of which, except one, were decided adversely to appellant's contentions in her attack upon the validity of the assessments and the right to collect same, in the case of *House* v. *Road Imp. Dist. No. 2 of Conway County, ante,* p. 330, submitted as a companion case with the case at bar. In order to avoid repetition, we refrain from discussing these points again. One ground of attack is made upon the validity of the assessments of benefits and the right to collect same against the lands in the instant case which was not made in the case referred to. It is alleged that the commissioners abandoned the construction of a lateral beginning about two miles north of Plumerville and running east to the eastern boundary line of the district and known as Shaw's Bridge lateral, or Caney Valley lateral. It is contended that the elimination of that lateral was a substantial departure from the improvement designated by the Legislature. The lateral in question was about eight miles long, and, under numerous decisions of this court, was an essential part of the improvement contemplated by the Legislature, and the elimination thereof would be a

material change in the plans, having the effect of avoiding the assessment against the lands in the district for its construction. *Phillips* v. *Tyronza & St. Francis Road Imp. Dist.*, 105 Ark. 487. The trial court found that the lateral in question had not been abandoned by the commissioners. The record reveals that from thirty-five to forty per cent. of the work on this lateral has been done, and that the commissioners intend to complete it along with the other portions of the road when the finances of the district will justify them in doing so. Each commissioner gave testimony to that effect. The only testimony appearing in the record tending to show an abandonment of the lateral is unauthorized letters written by two of the commissioners to the State Highway Department in an effort to procure State and Federal aid. The letters indicated a purpose on the part of the commissioners to abandon the lateral, but we do not regard them as conclusive upon the point. The commissioners who signed the letters testified they did so without any authority from the board, and that they were entirely unofficial. The finding of the chancellor to the effect that the commissioners had not abandoned the construction of the lateral is in accordance with the weight of the testimony. No error appearing, the decree is affirmed.

Hart, J. (dissenting). What was said in the dissenting opinion in the case of *House* v. *Road Improvement Dist. No. 2 of Conway County, ante,* p. 330, applies with equal force to the facts presented by the record in this case, and need not be repeated here.

There is another phase of this case which, in our judgment, requires us to voice our dissent in writing. In this case the majority of the court has announced the rule to be that it is only when it appears from the face of the act creating an improvement district, or other facts of which the court may take judicial knowledge, that the courts will review the action of the Legislature in arbitrarily including lands in such districts. It is true

that in the cases cited in the majority opinion it appeared from the face of the act that they were arbitrary and discriminatory, and the court so stated in the opinion. This was but the statement of a fact as it appeared from the record, and by no means constituted, or was intended to constitute, a holding that the courts would not review the action of the Legislature in establishing an improvement district, however arbitrary it might be, unless that fact was shown on the face of the statute itself, or by facts of which the court would take judicial knowledge. In cases of this sort the courts are not concerned about the method of proof. They are only concerned about whether the proof has been made by satisfactory and competent evidence. The general rule is that when, owing to peculiar or extraordinary facts established by satisfactory and competent evidence, the usual presumption in favor of the legislative act has been overcome, the courts will interfere to prevent an illegal exaction from the landowner and a virtual confiscation of his property. If the Legislature has no power to arbitrarily include the land in an improvement district, the courts should interfere and grant relief when that fact is shown by any competent and satisfactory evidence.

It would seem that the majority opinion, by necessary implication, overrules the salutary principles of law announced in *Louisiana & Ark. Ry. Co.* v. *State,* 85 Ark. 12. In that case the court held that a legislative determination that a station should be erected and maintained at a certain point is conclusive, unless the courts can declare, as a matter of law, that such determination is arbitrary and unreasonable. In that case proof was offered and rejected in the court below that there was no public necessity for the station and that the requirements of the legislation were so arbitrary and unreasonable as to demand a judicial review of the question. The court held that the rejected evidence was competent, and that for the court to refuse a consideration of it would be to deny the railroad company the equal protection of the law, and would, in effect, be depriving

it of its property without due process of law. In discussing the question the court referred to the fact that the Legislature has the power to determine for itself the boundaries of a local improvement district, but that the court had held that the power, when arbitrarily and unreasonably exercised, is not beyond judicial control.

The court approved the doctrine stated by the Supreme Court of the United States in *Norwood* v. *Baker,* 172 U. S. 269: "But the power of the Legislature in these matters is not unrestricted. There is a point beyond which the legislative department, even when exerting the power of taxation, may not go inconsistently with the citizen's right of property." The court said that this principle was applicable in the station case. Continuing, the court said that it is a question primarily for legislative determination, and that determination should not be disturbed by the court unless the power has been exercised without reason. We see no reason why the arbitrary action of the Legislature might not be shown by any competent proof in that case, and should be limited to facts of which the court might take judicial knowledge in the present case. It may not be impertinent to add that no reason is attempted to be given for such limitation in the majority opinion.

The principle upon which the arbitrary action of the legislature in matters of taxation and special assessment may be reviewed by the court is well stated in *Stuart* v. *Palmer,* 74 N. Y. 183. In discussing the subject Judge EARL, speaking for the court, said: "The Legislature can no more arbitrarily impose an assessment for which property may be taken and sold, than it can render a judgment against a person without a hearing. It is a rule founded on the first principles of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty or property without an opportunity to be heard in defense of his rights, and the constitutional provision that no person shall be deprived of these 'without due process of law' has its foundation in this rule. This provision is the

most important guaranty of personal rights to be found in the Federal or State Constitution. It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall arbitrarily be deprived of his life, liberty, or property. This the Legislature cannot do or authorize to be done. 'Due process of law' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. (*Weimer* v. *Brueinbury*, 30 Mich. 201). This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights.''

With reference to the facts showing the arbitrary action of the Legislature, but little need be said. The undisputed facts show that the lands of appellant are separated from direct connection with the proposed road by lakes and brakes which are impassable. The evidence shows that it would not be practical to construct bridges over this impassable way, and the only practical route for appellant to use the improved road is to leave her land and go upon adjoining lands in order to reach the road.

This brings the case directly within the rule announced in *Ruddell* v. *Rutherford*, 145 Ark. 49, and other cases of like character.

We concede the general rule to be that, if the Legislature has fixed the boundaries of the district and laid the special tax or provided for a subordinate agency to do so, its action must, in general, be deemed conclusive. To invoke the intervention of a court against the result of its conclusion is to invoke judicial authority to give its judgment controlling effect over that of the Legislature in a matter of the apportionment of a special tax, and this can only be done where the legislative action is manifestly colorable and arbitrary. This is the basis of our holding in *Ruddell* v. *Ruthford, supra.*

In that case the Legislature eliminated section 18, and thereby determined that it was not benefited by the im-

provement. It included section 19 in the district, thereby concluding that it was benefited. It appeared, from a map introduced in evidence, that it was impractical to go from section 19 to that part of the district where the improved road was without passing through section 18. Hence the statute was held to be arbitrary and discriminatory on its face.

The court was not concerned about the method of proof. Because the act on its face was discriminatory was not the fact which gave the court jurisdiction. The arbitrary and discriminatory action of the Legislature was what made the exception to the general rule and gave the court jurisdiction in the premises. This is illustrated by the case of *Little Rock* v. *Katzenstein,* 52 Ark. 107.

In that case the court held that the action of the city council in including property in an improvement district is conclusive of the fact that it is adjoining the locality to be affected, except when attacked for fraud or demonstrable mistake.

The court used the expression, a demonstrable mistake of fact, meaning, by this expression, a mistake of fact as to the existence of which there was no room for doubt. If no such limits exist, the power of local assessments would be but another means for arbitrary exaction, and in such cases the wrong must always be open to correction.

We also dissent from that part of the opinion which holds that the action of the Legislature in fixing the boundaries of the district was not arbitrary. . We concede that the members of the Legislature are presumed to have a general knowledge of the geography as well as the topography of the State. They are supposed to act upon this general knowledge and upon information furnished by the committees and other agencies selected by it. All these are evidences upon which the Legislature acts. But here again there is a well-known exception to the general rule, and that is that the Legislature can not act in an arbitrary or discriminatory manner in fixing the boundaries of a district.

In concluding the discussion on this branch of the case, the majority opinion gravely adds that this court is firmly committed to the doctrine that improved roads must necessarily have *termini* and improvement districts boundaries. This is so in the very nature of things, but it does not follow that the Legislature can act arbitrarily in fixing the boundaries without its action being reviewed by the courts. There, as here, the testimony is all one way, and shows that the Legislature acted arbitrarily and in a discriminatory manner in fixing the boundaries of the district. The court should declare, as a matter of law, that the creation of the district was invalid and any assessments levied under it an illegal exaction. To hold otherwise is to deprive the landowner of his property without redress.

Justice Wood concurs in the views here stated.