Ingram *v.* Board of Commissioners of Street
Improvement District No. 5.

4-5297                                        123 S. W. 2d 1074

Opinion delivered December 19, 1938.

*Ingram & Moher,* for appellant.

*Reinberger & Reinberger* and *E. D. Dupree, Jr.,* for appellee.

SMITH, J. Street Improvement District No. 5 of the city of Stuttgart was regularly and properly organized in 1916 to improve certain streets in that city. The ordinance levying assessments of benefits was passed August 7, 1916. Money was borrowed by the district to pay for the improvement, bonds were executed and sold and the assessments pledged for the payment thereof.

The district's commissioners filed suit in its own name on October 5, 1934, to enforce payment of certain delinquent assessments. The town lots of appellant Ingram were included in this suit. At the time the district was formed Ingram was the owner of lots 1 to 19, both inclusive, block 8, of Union Addition to the city of Stuttgart, and the valuation thereof, as shown by the last county assessment, was $2,000, and betterments were assessed against these lots by the improvement district in the sum of $2,496.81. He paid taxes for five years, aggregating $843.42, and then refused to pay any more and requested a revision of the assessments, which request was denied. In 1925, Ingram sold lots 9, 10, 11 and 12 to Stroh and Young, who have since paid the assessments against their lots, and they are not involved in this suit.

Under the ordinance levying the assessments of benefits the annual assessments became delinquent on October 17 of each year if not paid by that date. Ingram's first delinquency occurred October 17, 1923, for the taxes due in 1923, but the suit for these taxes and the other taxes which later became delinquent was not filed until October 5, 1934, which was ten days after the last bond issued by the district had been paid. The district at that time

had no indebtedness outstanding except the sum of $350 due its attorney for services rendered, the validity of which indebtedness is not questioned.

Ingram alleged in his answer that he had already paid a sum in excess of any benefits received, and he alleged that the bonds and other indebtedness of the district had been paid except said sum of $350. He alleged that the commissioners of the district had misappropriated the sum of $3,052, which, if collected, as it could and should be, would render any other collection unnecessary and that the commissioners then had in their hands the sum of $669,30. Upon these allegations he denies the authority of the district to enforce payment of delinquent assessments.

H. S. Neal filed an intervention in the suit to collect the delinquent taxes, in which he alleged that he was a property owner and taxpayer within the improvement district, and that the last assessment against the property in the district was for the year 1934, which he and other property owners had paid in full, together with all prior assessments. He alleged that the aggregate of all assessments due and unpaid was $2,563.31, exclusive of interest and costs.

The intervener alleged that the taxes paid by himself and other taxpayers had created a fund sufficient to retire all the bonds and practically all other indebtedness owing by the district, so that he and other taxpayers similarly situated have contributed a greater amount towards the payment of the indebtedness of the district than they would have been required to pay if all other taxpayers had paid their annual assessments, as the same became due and payable. He, therefore, prayed that all delinquent taxes be collected, and that the balance remaining after the payment of the debts of the district be prorated among the taxpayers who had paid their assessments. An answer was filed to this intervention denying the equity of granting this relief.

An agreed statement of facts was filed relating to the value and betterments of Ingram's lots, which appears to show that his assessments were excessive and were greater than those of certain other owners of similar

property; that the commissioners of the district paid out of the funds of the district the sum of $3,052 for repairs made to the streets which the district had improved, and that the streets of the district had been turned over to the city of Stuttgart, which city had levied a special tax in the fall of 1935 to repair the streets within the improvement district and certain other streets in the city, and further that no warrant for the collection of delinquent assessments against any property within said district was ever issued by the clerk or recorder of said city, or any other officer, for any year except 1918.

It was stipulated that the cause might be heard and a decree rendered in vacation, and this was done, and a written opinion was prepared by the chancellor. In this opinion it was found that the delinquent taxes, exclusive of penalty, interest and costs, amounted to $2,563.31; that the original complaint had been adopted by the intervener, and that the assessments were not demonstrably erroneous.

Upon the question of the expenditure of the $3,052 by the commissioners for repairs, the court found that the money had been spent for this purpose without authority, "and that some adjustment should be made of the amount so expended before a final decree is rendered in this case. In other words, I am holding that the commissioners are personally liable for the amount of the expenditures made by them for repairs in the sum of $3,052, and that the defendants are liable for the payment of the delinquent taxes for the years set out in the agreed statement of facts. Of course, there can be no penalty collected. The Supreme Court of Arkansas has so held in the case of *McPherson* v. *Board of Commissioners*, 178 Ark. 289, 10 S. W. 2d 876."

The opinion of the chancellor reviews and quotes from the opinion of this court in the case of *Paving District No. 5* v. *Fernandez*, 142 Ark. 21, 217 S. W. 795, and the same case in 144 Ark. 550, 223 S. W. 24, and from the case of *Thibault* v. *McHaney, Receiver*, 127 Ark. 1, 192 S. W. 183. The effect of the opinion is to grant the relief prayed by the district and the intervener, and concludes with the direction that "A decree will be entered

in conformity with this opinion when prepared and approved by counsel for the respective parties.'' The opinion is dated April 6, 1938, and is indorsed by the clerk of the court July 25, 1938.

A decree was entered in vacation directing the commissioners to pay the attorney's fee, and recites that ''The court finds all the questions of law and fact in favor of the answering defendants, and finds that there is no equity in the complaint as against said defendants, nor is there any equity in the intervention, and that both the said complaint and said intervention should be and the same are both hereby dismissed, as to said answering defendants, for want of equity as to all the lots hereinbefore described.'' It was ordered that the district be dissolved, and that after paying the attorney's fee to distribute any balance among the parties who paid their last assessment, and that all decrees or claims of the district ''be and they are hereby satisfied.''

The decree does not reflect the finding and opinion of the court, but is in direct contravention of it. There is no intimation that any fraud was practiced or attempted upon the court, but, in effect it would be a fraud if the decree was permitted to stand as the decree of the court.

On July 25, 1938, which was a day of the same term of court, a motion was filed by attorneys for the improvement district to set aside this vacation decree, upon the ground that it was entered without notice and did not conform to the opinion rendered by the court on April 6, 1938. This motion was sustained on the day on which it was filed, and it was ordered that the decree be vacated and set aside. On the same day the court rendered a supplemental opinion. It cannot be said that the chancellor may have changed his mind between the date of the first opinion and the date of the entry of the vacation decree, for the reason that this last opinion differs from the first one in a single respect, and that was to set aside the direction that a decree be rendered against the commissioners. In explanation of this change in directions in the decree the opinion recites:

"It will be observed from reading the above portion of the agreed statement of facts that the court had no way of ascertaining as to when this expenditure was made, whether beyond or within the statutory period of limitation, and as the court did not feel justified in assuming that the expenditure of this amount was barred by limitation the commissioners were found to be liable for this unauthorized expenditure. This finding was, of course, based on decisions of the Supreme Court of Arkansas.

"However, it has now been shown by the answer of one of the original commissioners of the district, C. H. Denslow, and oral testimony in support thereof, that the above amount, $3,052, was expended by him and the other former commissioners of the improvement district for necessary repairs made upon the streets embraced in this particular paving district. It is further shown by his answer that this expenditure was made many years ago and any claim for this amount is now and has long since been barred by the statute of limitation. Therefore the former or old commissioners of this improvement district, including Mr. Denslow, could not be legally held for this expenditure, even though it was not authorized by law, and that part of the original opinion rendered in this cause on April 6, 1938, which holds the commissioners liable personally for the sum of $3,052 expended by them, for the reasons herein stated is eliminated, and the decree will be confined solely to the rendition of judgment against the delinquent defendants for the amount shown to be due by them, which, as I understand, is $2,-563.31, exclusive of penalty, interest and cost.

"The opinion rendered herein on April 6, 1938, is therefore amended, as stated herein, and the decree will be entered accordingly."

Upon this amended opinion there was rendered and entered the decree from which is this appeal. Upon the opinion amended in this respect only this decree finds and adjudges that the claim for revenues improperly expended by the commissioners is barred by the statute of limitations, and a lien for the delinquent taxes was declared and a sale of the lots ordered if the taxes be not

paid within the time limited for that purpose. The commissioner appointed to make the sale was directed to report his actions thereunder for such further orders as may be necessary. Both the first and second opinions of the court above referred to manifest the intention of the court to have the delinquent taxes collected and reported and the proceeds, after paying all the obligations of the district, prorated among the property owners in a manner later to be directed.

The first question to be disposed of is the effect of the decree entered as a vacation decree. The insistence is that this decree dismissed the whole proceedings as being without equity, and has become final, inasmuch as no appeal was prosecuted therefrom.

This contention cannot be sustained for several reasons. The first is that this appeal has brought before us for review the entire proceedings. The second— which is, of itself, a sufficient reason—is that the alleged vacation decree was not the decree of the court. It not only did not reflect the order and judgment of the court, but was in direct contravention of it. Certainly, the court was not without power to correct this obvious error. The second decree was somewhat in the nature of a *nunc pro tunc* order, made to have the records speak the truth, not to change the court's order and direction, but to make the decree conform to the order which had been made and the directions which had been given in the opinion, and this opinion had directed that a decree be prepared to conform with its directions, but, as has been said, this was not done. Another reason is that both decrees were rendered at the same term of court, and the matter remained within the control of the court until after the expiration of the term, and the change was made before the term had expired.

It is conceded that this would be the law but for the fact that the first decree was rendered in vacation. We think that this distinction is artificial, and not substantial and does not accord with our cases on the subject.

The case of *Metz v. Melton Coal Co.,* 185 Ark. 486, 47 S. W. 2d 803, involved a vacation decree which was later

vacated and set aside. This case declared the practice under § 2190, Crawford & Moses' Digest, which reads as follows: "A chancellor may deliver opinions and make and sign decrees in vacation in causes taken under advisement by him at a term of the court; and, by consent of parties, or of their solicitors of record, he may try causes and deliver opinions, and make and sign decrees in vacation. Such decrees, and all other orders and decrees which a chancellor may make in vacation shall be entered and recorded on the records of the court in which the cause, or matter is pending, and shall have the same force and effect as if made, entered and recorded in term time, and appeals may be had therefrom as in other cases."

Act No. 5 of the Acts of 1937, p. 16, was "An act to amend § 2190, C. & M. Digest of the statutes of the state of Arkansas, so as to provide that chancery courts will always be in session for the rendition and enforcement of orders and decrees affecting domestic relations." As thus amended the act appears as § 2817, Pope's Digest. This act of 1937 effects no change in § 2190, Crawford & Moses' Digest, so far as it relates to the question here under consideration, that of the power of the court to amend, vacate, or correct decrees rendered in vacation before the expiration of the term of court.

The holdings of the court in this case of *Metz* v. *Melton Coal Co., supra,* as reflected in the headnotes of that case, are as follows: A default judgment may be set aside on motion and without notice at the same term at which it was rendered, and no appeal lies from a decree setting aside a default judgment. In the body of that opinion it was said: "This court has many times held that the trial court may during the term vacate its judgments, and that it might do so without notice."

We perceive nothing in this § 2190, Crawford & Moses' Digest, which indicates that sanctity should be given to vacation decrees, making them impervious to the further order of the court during the same term. The contrary appears to be true, as the section quoted provides that such decrees ". . . shall have the same force and effect as if made, entered and recorded in term

time, and appeals may be had therefrom as in other cases." See, also, *Browning* v. *Berg,* 196 Ark. 595, 118 S. W. 2d 1017.

We conclude, therefore, that the vacation decree does not conclude the question that the suit of the improvement district to enforce the payment of the delinquent taxes is without equity.

The court expressly found the fact to be that no demonstrable error had been made to appear in Ingram's assessments of benefits which operated to invalidate them. There was no testimony in refutation of that offered by Ingram to the effect that his assessments were excessive in comparison with those of other owners of similar property; but this was not a demonstrable mistake, within the meaning of our decisions permitting their cancellation when, collaterally attacked, as they are here. The remedy provided by the legislation under which the improvement district was created to correct such errors is by appeal from the assessments within the time and manner allowed by law for that purpose. Among the innumerable cases to this effect is the late case of *Wood.* v. *Tobin,* 193 Ark. 964, 104 S. W. 2d 203.

In the case of *Carney* v. *Walbe,* 175 Ark. 746, 300 S. W. 413, Chief Justice HART said: "By the expression, 'demonstrable mistake,' is meant a mistake of fact as to the existence of which there is no room for doubt. (Citing cases.)" He further said: "Where the property owner delays until after the period of time prescribed by statute for a direct attack on the action of the council establishing the district and the assessment of benefits to the real property situated therein a suit of the property owner to review the proceedings of the common council establishing the district or the board of assessors in assessing the benefits to the real property within the district is a collateral attack, and such proceedings can only be set aside when they appear on their face to be demonstrably erroneous. In the case last cited, in discussing the rule as to a collateral attack on a street improvement district, it was expressly stated that the court could only look to the face of the papers to discover whether or not there was a demonstrable error in the assessment of

benefits, and *House* v. *Road Improvement District,* 158 Ark. 357, 251 S. W. 21, was cited.''

Certainly the fact that appellant's betterments were assessed at an amount more than twenty per cent. greater than his last assessed valuation for general taxation does not constitute a demonstrable mistake. As a matter of fact they were more than one hundred per cent. greater than his assessed valuation for general taxation, but this court has uniformly held that this twenty per cent. limitation relates to the latest assessed valuation of all the property in the district, and not to the assessed valuation of any particular piece of property. The law was so declared in the case of *Kirst* v. *Street Improvement District,* 86 Ark. 1, 109 S. W. 526, and that interpretation of this limitation has been frequently reaffirmed.

The contention that the suit to enforce payment of the delinquent taxes was unauthorized, because no warrant for the collection of assessments was ever issued by the clerk or recorder of the city of Stuttgart, as required by § 5669, Crawford & Moses' Digest, is answered by the opinion in the case of *Martin* v. *Board of Commissioners Street Improvement District No. 5 of Stuttgart,* 190 Ark. 747, 81 S. W. 2d 414. It was stipulated in that case ''That no warrant was issued by the city clerk or town recorder to the city collector authorizing the collection of assessments upon the property except the first within forty days after the passage of the ordinance creating the district, and fixing a lien upon the property within the district.'' That case involved the collection of delinquent taxes of 1928 and each year thereafter, including 1934. It will be observed that we have here the identical district—Street Improvement District No. 5 of Stuttgart—trying to enforce payment of delinquent taxes for some of the same years involved in the Martin Case, *supra.* In overruling the contention made in that case, as in this, we there said: ''We are unable to see, particularly in this case, any prejudicial effect arising out of the failure of the clerk or recorder to furnish to the city collector a list of properties, together with the assessments to be collected, with a warrant authorizing the collection thereof. This dereliction of duty on the part

of the clerk certainly did not operate as a discharge of the lien. . . ."

It was contended in that case, as here, that the right to collect delinquent assessments was barred by the statute of limitations when suit was filed, but it was there held, to quote a headnote in that case, that "The time for enforcing the lien of assessments in municipal improvement districts is not limited by statute."

This is not a case where all property owners have paid their taxes equally and sufficiently to discharge the indebtedness of the district, but, notwithstanding that fact, the attempt is made to collect additional taxes. In such a case any propery owner might well resist the collection of further taxes. But it will be remembered that this Martin Case, *supra*, involved taxes due appellee, Street Improvement District No. 5 of Stuttgart, for the same years for which appellants' lands were delinquent. Whether there was only one suit or separate suits does not appear, but the facts are the same in both cases, and there is the same authority to sue in this case as existed in the Martin Case, and the relief granted there was to compel the delinquent landowners to pay their taxes.

It is finally argued that the court was in error in holding that the suit against the commissioners for the diversion of funds, as hereinabove stated, by using the taxes of the district to repair the streets, was barred by the statute of limitations, and it is insisted that if these funds were recovered, as they may be and should be, there would be no occasion to collect further taxes, especially so as the commissioners then had $669.30 in their hands.

The case of *Roper v. Greene & Lawrence Drainage District,* 194 Ark. 493, 108 S. W. 2d 584, is cited to support the contention that the custody of the taxes collected for the benefit of the improvement district constituted an express trust, against the enforcement of which the plea of the statute of limitations is not available.

The $3,052 was expended for the benefit of the district, but for a purpose not authorized by law. In the Roper Case, *supra,* assessed benefits had been collected for the purpose of retiring the bonds issued by the dis-

trict, to construct the improvement. The holder of one of these bonds sued to enforce its payment. The bond had matured more than five years before the suit was filed. It was said that the commissioners held tax revenues as trustees of an express trust, against which the statute of limitations did not run, and the bondholder was permitted to recover. The commissioners here did not have possession of the money spent to repair the streets, indeed it had been spent many years ago, as found by the court; but in view of what will later be said, this affords no excuse to appellant for refusing to pay his taxes.

It appears to be true that if the collection of the delinquent taxes here sued for is enforced the commissioners will then have in their hands a sum greater than is necessary to discharge the obligations of the district, and the court has reserved for future decision the disposal of this excess. But this fact constitutes no defense. When appellant has paid or been compelled to pay the taxes here sued for, he will then have paid no more than any other property owner in the district has been compelled to pay.

This question has been decided adversely to appellants' contention in several different cases. These payments by others were not voluntary payments. It was said in the case of Thibault v. McHaney, 127 Ark. 1, 192 S. W. 183, that "The ascertainment by the court of the amount necessary to assess against the property was a mere estimate, and the payment by the property owners was upon the implied assurance that the amount in excess of what was required to discharge the obligations of the district would be refunded pro rata to the property owners. Now these recalcitrant taxpayers say that they should be permitted to profit by the fact that they held back and refused to pay until the other property owners paid substantially enough to discharge the joint obligations. The position is wholly untenable, and the doctrine invoked has no application, which is based entirely upon the theory of estoppel—that one who pays money voluntarily, and with full knowledge of the facts will not be heard to assert the right to recover it back. In this instance the property owners undoubtedly paid volun-

tarily with knowledge of the facts, but, as already stated, they paid upon the implied assurance that all of the taxpayers would be required to respond in like proportion, and that any sum in excess of the amount required to discharge the obligations would be refunded."

In the case of *Paving District No. 5* v. *Fernandez,* 142 Ark. 21, 217 S. W. 795, the facts were that the commissioners of a municipal improvement district, after paying the cost of the improvement, and after discharging all obligations of the district, had $22,000 in their hands. It was held in that case that the act of the General Assembly authorizing the expenditure of this money for repairs was an unconstitutional diversion of public funds, and it was there also held that the action of the chancellor in appointing a receiver to work out the equities between the property owners was error, for the reason that the control of the funds could not be taken from the hands of the commissioners of the district, as the court might give to and enforce any directions to the commissioners as well as to a receiver. But that portion of the decree which directed that unpaid taxes be collected, to the end that all property owners might share equally the burden of paying for the improvement was affirmed, notwithstanding the fact that the district then had no outstanding obligations. This was true because, as there said, "All the affairs of the district could not be wound up until all the outstanding assessments had been collected, as it could not be known prior to that time the sum to be divided among the taxpayers." In other words, until all the taxpayers had paid proportionately the excess in the hands of the commissioners could not be ascertained and equitably divided.

By the time this Fernandez Case reached this court on the second appeal (144 Ark. 550, 223 S. W. 24), it was said in that opinion that "It affirmatively appears that the major portion of the taxes have since been collected by foreclosure proceedings. The court considered the advisability of postponing the distribution of the fund until all delinquent taxes had been collected, but in the decree rendered the court found the fact to be that the cost of collecting such assessments as remained unpaid

would practically equal the sum collected and would add so small a sum to the amount to be distributed that further delay was not advisable.'' The right and the duty of the commissioners to collect delinquent assessments was not questioned, but was fully recognized. It was there said: ''In view of the fact that more than three years have elapsed since the filing of this audit, showing the delinquent assessments, we cannot say that the court abused its discretion in ordering the distribution at this time. Moreover, the decree reflects the purpose of the court to retain control of the case until all equities have been adjusted.''

In the case of *Chicago Mill & Lumber Co.* v. *Drainage District No. 17,* 172 Ark. 1059, 291 S. W. 810, so many landowners made default in paying their drainage taxes that it became necessary to increase the per cent. of the betterments to be collected. The lumber company complained that this would not be necessary if all the landowners paid their taxes, as it had done, and that this increase discriminated against those who were willing to pay, and had done so. It was there said: ''The contention of appellant, expressed in its second request, that the levy of the proposed rate would result in requiring it and other landowners who had paid and who continued to pay their taxes to bear a greater proportionate burden than that imposed upon the lands which were allowed to go delinquent, is answered in the Rowland Case, *supra,* and in that of *Arkansas-Louisiana Highway Imp. Dist.* v. *Pickens,* 169 Ark. 603, 276 S. W. 355. It was pointed out in those cases that the lien of the district continued until the taxes were paid or until the lands themselves were acquired by the district through sales for the non-payment of the taxes, and that, when the delinquent taxes were paid, they became available and should be used in paying the obligations of the district, and further, that, if the lands were sold to the district and not redeemed, then the entire value of the lands to be realized by a sale thereof would be available for this purpose. So that, while a delay would be entailed in obtaining and applying revenues from the delinquent lands, these revenues would finally be obtained and applied, and thus no unequal burden would be imposed.''

It is insisted that even though appellants' assessments are not demonstrably erroneous, it would, nevertheless, be inequitable and unnecessary to require him to pay more taxes, for the reason that the district has discharged its bonds and owes but little else. This is true as to the debts, but, as was said in the Chicago Mill & Lumber Company Case, *supra,* and in the Fernandez Cases, this result has been achieved by certain landowners paying their taxes, while others declined to do so, and when appellants have paid delinquent taxes against their lands, they will then have done no more than other property owners have already been required to do. They will then, and not before, have discharged their proportionate parts of the district's debts, and as the decree permits payment without penalty or interest, they have had an indulgence not enjoyed by the other property owners who long since paid their taxes. When all have paid their taxes the court, as in the Fernandez Case, *supra,* may do equity. It cannot do so before.

The decree of the court below is correct, and it is, therefore, affirmed.

HUMPHREYS and MEHAFFY, JJ., dissent.