PAPA *v*. KITCHENS, SHERIFF.

4-6816                                                    164 S. W. 2d 439

Opinion delivered June 29, 1942.

*J. M. Walker* and *Jo M. Walker*, for appellant.

*Burke, Moore & Walker,* for appellee.

HOLT, J.  Wharf Improvement District No. 1, embracing the real property within the city of Helena, Arkansas, was organized in 1918 under the general statutes of this state authorizing the formation of improvement districts in municipalities.  The validity of this district was approved by this court in *Solomon* v. *Wharf Improvement District,* 145 Ark. 126, 223 S. W. 385.  Benefits were assessed, levied and collections begun in 1926 to continue over a period ending in 1944.  Five per cent. interest bearing bonds were issued by the district in the amount of $225,000.  The proceeds from the sale of these bonds were used in constructing a river and rail terminal at Helena, Arkansas.

Prior to 1938, some of the taxpayers within the district, including appellant, Sam Papa, became delinquent.

March 23, 1938, the district under the powers granted by the terms of act 100 of the Acts of 1933, sold all the property of the Wharf Improvement District to the Inland Waterways Corporation, a government agency operating what is known as the "Federal Barge Lines" on the Mississippi river, for a consideration of $100,000. At the time this sale was consummated, the outstanding bonded indebtedness of the district amounted to $167,000.

Shortly after the consummation of this sale in 1938, the Wharf Improvement District brought suit in the Phillips chancery court against appellant, and other delinquent property owners, to foreclose the respective tax liens.  Foreclosure decree was entered and sales made by

the commissioner and duly confirmed, and the decree contained an order authorizing and directing the clerk of the chancery court to issue writs of assistance to enforce compliance with its orders. Appellant made no defense to this foreclosure suit.

On December 21, 1941, appellant filed the present suit against F. F. Kitchens, sheriff of Phillips county, and J. B. Lambert. He alleged in his complaint, among other things, that appellant is the owner of property within the improvement district in question; "That on the 14th day of November, 1941, the circuit clerk, and ex-officio chancery clerk of said Phillips county, issued a writ of possession directed to said F. F. Kitchens, as sheriff of said county, authorizing and directing him to take possession of said real estate of the plaintiff herein (appellant here), and on the 24th day of July, 1939, said defendant, J. B. Lambert, was appointed receiver, and authorized and directed to collect the rents from said real estate of the plaintiff, and apply the same to the payment of delinquent assessments due and owing by the plaintiff to the said Helena Wharf Improvement District.

"Plaintiff alleges that the writ of possession issued by said clerk, and the appointment of said J. B. Lambert as such receiver were void for the following reasons:

"That said Wharf Improvement District was organized pursuant to the laws of the state of Arkansas . . .; that . . . the improvements . . . constituting said Wharf Improvement District were duly constructed and completed . . .

"That by Act 100 approved March 16, 1933, the legislature of the state of Arkansas authorized the sale of 'Wharves, River and Rail Terminals, equipment and appliances incidental to the operation thereof, owned and operated by any Wharf Improvement District in this state.'

"That said act provided among other things that no sale of the property of such district shall be made for less than the amount necessary to pay all of the outstanding indebtedness against the district. . . .

"That the provisions of said Act 100 relating to the adoption of the resolution by the board of commissioners of said district, that it would be to the best interest of the district that said property be sold, and the petition of the majority of the owners of property located within said district, asking that such sale be made, and the publication of the notice of the contemplated sale, and all other preliminary requirements of said act were duly complied with.

"That pursuant to the action of the board of commissioners of said district, and the action of a majority of the owners of property located in the district, ordinance No. 2206 was adopted by the city council of said city of Helena, authorizing the sale of the property constituting the Helena Wharf Improvement District, and directing a deed to be executed conveying said property to the Inland Waterways Corporation.

"That on March 23, 1938, pursuant to the action of said board of commissioners and pursuant to the action of the said city council, a warranty deed was executed by D. T. Hargraves as mayor and R. G. Howard as city clerk conveying all the property of said Wharf Improvement District to said Inland Waterways Corporation for a cash consideration of $100,000.

"Plaintiff alleges that said Wharf Improvement District had no power or authority to sell the property belonging to said district, except in accordance with the terms and provisions of said Act 100, and that upon the sale of said property, the board of commissioners had no power or authority to levy any further assessments on any of the property located in said district, or to collect any assessments that may have been theretofore levied."

And (quoting from appellant's brief) "It further alleges that said F. F. Kitchens as sheriff is threatening to take possession of the property of the appellant by virtue of said writ of possession and that said J. B. Lambert as such receiver is interfering with the possession of the tenants of the appellant, and appellant asks that said writ of possession be quashed and that said receiver be discharged."

To this complaint, appellee filed demurrer alleging "(1) the complaint shows upon its face that the court has no jurisdiction of this cause of action; (2) the·complaint does not state facts sufficient to constitute a cause of action." Upon a hearing the demurrer was sustained and appellant refusing to plead further, the complaint was dismissed for want of equity. This appeal followed.

Appellant's primary contention here is stated in his brief in this language: "Said district had no power or authority to sell the property belonging to said district except in accordance with the provisions of Act 100, and that upon a sale of the property, the board of commissioners had no power or authority to levy any further assessments on the property located within the district, or to collect any assessments that may have been theretofore levied."

It is true, as appellant contends, that the power of the district to sell the property in·question is derived from Act 100 of the Acts of 1933 (now §§ 7740-7744, Pope's Digest). The sale was duly made under the terms of the act by the district of its terminal property to the Inland Waterways Corporation on March 23, 1938. Appellant does not question the city's power to make this sale under the act in question, but he does question the power of the board of commissioners of the district to collect any delinquent assessments on appellant's property within the district that were due and unpaid prior to the date of sale.

It is our view, however, that under the terms of the act, *supra,* the power was given to the district to enforce payment of all delinquent taxes against property within the district prior to March 23, 1938, the date of sale. We think this power must be inferred from the provisions of § 4 of the act which provides: "If the properties authorized to be sold hereunder should sell for more than the secured and unsecured indebtedness of the district, then such excess shall be apportioned and paid by the board of improvement back to the then owners of record of the real property of the district in the same proportion that each parcel of said property has contributed

in taxes for the acquisition, construction and operation of said improvement.''

Clearly this section contemplates that when all indebtedness against the district has been paid, any excess shall be refunded by the district to all taxpayers in proportion to the amount of improvement taxes paid by each. No equitable distribution could be made until all taxpayers within the district had paid all taxes assessed and due at the time of the sale in question.

Here appellant's property was properly foreclosed to satisfy the lien for all delinquent taxes that had accrued prior to March 23, 1938. No effort has been made to assess or collect taxes from appellant subsequent to the date of sale. We find nothing in Act 100, *supra,* which would prevent or bar the enforcement of the payment of these delinquent taxes against appellant which had accrued and were due the district prior to and at the time of the sale of the terminal property on March 23, 1938. Appellant, a recalcitrant taxpayer, cannot be permitted to profit by reason of the fact that other taxpayers in the district have paid their taxes in full in order to discharge the district's obligation.

The question presented has been very thoroughly considered and discussed by this court in the recent case of *Ingram* v. *Board of Commissioners of Street Improvement District No. 5,* 197 Ark. 404, 123 S. W. 2d 1074. That decision is adverse to appellant's contention here. In that case many previous decisions of this court are reviewed and there it is said: ''It appears to be true that if the collection of the delinquent taxes here sued for is enforced, the commissioners will then have in their hands a sum greater than is necessary to discharge the obligations of the district, and the court has reserved for future decision the disposal of this excess. But this fact constitutes no defense. When appellant has paid or been compelled to pay the taxes here sued for, he will then have paid no more than any other property owner in the district has been compelled to pay.

''This question has been decided adversely to appellant's contention in several different cases. These pay-

ments by others were not voluntary payments. It was said in the case of *Thibault* v. *McHaney*, 127 Ark. 1, 192 S. W. 183, that 'The ascertainment by the court of the amount necessary to assess against the property was a mere estimate, and the payment by the property owners was upon the implied assurance that the amount in excess of what was required to discharge the obligations of the district would be refunded *pro rata* to the property owners. Now these recalcitrant taxpayers say that they should be permitted to profit by the fact that they held back and refused to pay until the other property owners paid substantially enough to discharge the joint obligations. The position is wholly untenable, and the doctrine invoked has no application, which is based entirely upon the theory of estoppel—that one who pays money voluntarily, and with full knowledge of the facts will not be heard to assert the right to recover it back. In this instance the property owners undoubtedly paid voluntarily with knowledge of the facts, but, as already stated, they paid upon the implied assurance that all of the taxpayers would be required to respond in like proportion, and that any sum in excess of the amount required to discharge the obligations would be refunded.''

There the court, after reviewing the decisions of *Paving District No. 5* v. *Fernandez*, 142 Ark. 21, 217 S. W. 795, and that of *Chicago Mill & Lumber Co.* v. *Drainage District No. 17*, 172 Ark. 1059, 291 S. W. 810, concludes with this language: ''. . . this result (payment of debts of district) has been achieved by certain landowners paying their taxes, while others declined to do so, and when appellants have paid delinquent taxes against their lands, they will then have done no more than other property owners have already been required to do. . . . When all have paid their taxes the court, as in the Fernandez case, *supra*, may do equity. It cannot do so before.'' See, also, *Haraway* v. *Zambie*, 203 Ark. 550, 157 S. W. 2d 504.

Finding no error, the decree is affirmed.