BRADLEY COUNTY ROAD IMPROVEMENT DISTRICTS NOS.
                      1 AND 2 v. WILSON.

Opinion delivered March 16, 1925.

1. HIGHWAYS—PRELIMINARY WORK—ATTORNEY'S FEES.—An attorney employed by a board of commissioners to perform legal services for a road improvement district, on the subsequent repeal of the act creating the district, is entitled to recover on a *quantum meruit* for services performed in good faith in the preliminary work, and the fact that he co-operated with those in favor of carrying out the scheme of improvement is not ground for refusing compensation to him.

2. HIGHWAYS—ATTORNEY'S FEE.—An allowance of $1250 for services of an attorney for two road improvement districts in preliminary work will not be held to be inadequate, though the testimony of witnesses would have justified a larger sum, in view of the chancellor's discretion and the fact that the questions involved and work done in both districts were the same as if done for one district.

3. HIGHWAYS—EXPENSES OF CHAIRMAN FOR PRELIMINARY WORK.— The chairman of the board of road commissioners was not entitled to compensation for services performed and expenses incurred on his own initiative in giving his services outside of attendance on board meetings and without authority from the board of commssioners.

Appeal from Bradley Chancery Court; *E. G. Hammock,* Chancellor; affirmed.

R. W. *Wilson,* and J. C. *Clary,* for appellants.

R. E. *Wiley,* for appellees.

McCULLOCH, C. J. The two appellants are road improvement districts in Bradley County, created by special acts of the General Assembly of the year 1919. Each district covers a large area, and was formed for the purpose of improving extensive roads at a very considerable cost. Each of the acts creating the districts are in the customary form, providing for a levy of taxes on benefits to pay the cost of the improvement, and authorizing the commissioners to borrow money and issue bonds and to employ engineers, attorneys, and other agents. The board of commissioners in each case employed appellee, a practicing attorney at the bar of that county, as attorney to represent the district. A contract was made with a firm of engineers to do the engineering work. Appellee performed services very considerable in extent, according to his contention. He acted as counsellor for the districts throughout the preliminary work, and conducted important litigation involving the question of the validity of the organization of the districts. There were three different cases, which were bitterly contested, all of which litigation appellee conducted for the two districts. The cases were tried in the lower court and appealed to this court. Part of the preliminary engineering work was done, but, before that was completed, the opposition among the taxpayers of the county became so pronounced that all of the preliminary work of every kind was halted, and the General Assembly of 1921 enacted statutes repealing the former special statutes creating these districts, and authorizing the affairs of the districts to be wound up in the chancery court and the preliminary expenses paid. Pursuant to the statutes, appellee filed his claim in the chancery court for allowance, which claim was resisted. Appellee claimed the sum of $1,500 from each district as actual compensation for his services, making a total of

$3,000, and expenses incurred, amounting to $1,460.64. He presented an itemized account of his expenses, containing very numerous items for traveling expense, telegrams and telephone, stenographic work, certified copies of records, and various other kinds of expenses. The case was heard by the chancery court on testimony adduced by each side, and the court rendered a decree allowing appellee a fee of $625 against each district as actual compensation for his services, and the sum of $1,027.13 for his expenses, making a total allowance of $2,277.13. The cases were consolidated and tried together, but separate allowances were made against each district, and there has been an appeal from each of the allowances. Appellee cross-appealed, and contends that the amount of the chancellor's allowance as compensation for his services was not sufficient.

The claim of F. S. Edrington, one of the commissioners of the district, and the chairman thereof, was involved, and the chancellor allowed him the sum of $25, and he has prosecuted an appeal.

The testimony adduced in the case took a very wide range, and there was a great volume of it directed to matters which we do not deem material—that is, the controversy which arose between appellee and others interested in the districts, with dissatisfied taxpayers. In this testimony there are criminations and recriminations and charges of bad faith. But we have reached the conclusion, in the consideration of this testimony, that it has little or no bearing whatever upon the present controversy, for appellant is only claiming compensation for services actually rendered the districts and his expenses—nothing for services rendered after it was determined that the work should be halted until the Legislature could have an opportunity to repeal the statutes.

The law of the case is very well settled by decisions of this court, and, according to those decisions, appellee is entitled to recover for services performed in good faith, not upon his contract (for he had no separate con-

tract for the performance of preliminary services), but on the *quantum meruit.* *Sain* v. *Bogle,* 122 Ark. 14; *Thibault* v. *McHaney,* 127 Ark. 1. In the case last cited we summed up the law, as to the rights of an attorney to recover for services as follows:

"It must be remembered that, under our former decision, the compensation to be allowed narrows down to expenses which were necessary to ascertain the feasibility of the plan. Of course, it was proper to have the services of attorneys in the proceedings to that extent, but no compensation could be claimed for services which related to the completion of the improvements for which the organization of the district was designed. The work of preparing the original bill and presenting it to the Legislature, and urging it before the committees of that body, was not service which was chargeable against the district. Neither were the services performed in opposition to the effort of taxpayers to secure the dissolution of the district chargeable against the district. The services thus performed by the attorneys for and against the scheme were in the interest of the individuals who were favoring or opposing the creation or continuation of the district, and not of the district itself. In other words, those services were performed in promoting the scheme and not in carrying out the purposes of the organization itself. Of course, the fees for conducting the litigation which involved the very life of the district should properly be allowed as a claim against the district, as we held in the former opinion; so would any other service performed looking to the ascertainment of the feasibility of the plan."

It is contended by counsel for appellants that appellee acted in bad faith in promoting the projects over the protests and opposition of taxpayers, and that he is not entitled to any compensation. They rely, in support of their contention, on the case of *Kern* v. *Highway District,* 154 Ark. 107. We do not think that the case just cited has any application, for it involved the right of an engineer to recover compensation for a sur-

vey made in the face of actual knowledge that the proj-
ect was wholly without feasibility and could not be
accomplished within the limits of cost prescribed by the
statute, and that it would be impossible to conform to
the plans which he outlined. In the present case, appel-
lee was employed to perform legal services for the board,
and, so far as concerns those services, he had nothing to
do with the controversy between the taxpayers. His
services do not relate to that subject, nor can he be
denied compensation because he participated in the con-
troversy. The most that was shown in regard to that
matter is that there was a controversy between factions,
and that appellee cooperated with the one which was
in favor of carrying forward the work of improving the
roads. If it be conceded that he was on the wrong side
of the controversy, this is not sufficient to afford grounds
for denying compensation for his services performed by
authority of the board of commissioners of the districts.

There is scarcely any question about appellee being
entitled to the amount of compensation which the chan-
cery court allowed—that is to say, compensation for
actual services rendered. This fact is established by
the testimony of eminent lawyers who were introduced
on both sides of the controversy, whose testimony, with-
out disagreement, establishes the reasonableness of the
fees allowed by the chancellor, if appellee be found to be
entitled to recover anything at all.

There is a question involved as to the proper
allowance to be made on appellee's expense account.
The chancellor eliminated a considerable portion of the
account, and we are unable to say that the finding of the
chancellor is against the preponderance of the evidence,
or that the items were not proper charges against the
districts.

There is a still more serious question presented by
appellee's cross-appeal as to the amount of fee allowed,
but we are unable to say that the chancellor's finding on
that question was incorrect. The testimony of the law-
yers justified a larger allowance, but the chancellor had

some discretion in weighing this testimony and applying it to the peculiar facts of this case, and we think it was very important to consider the fact that the two districts were operated, in their preliminary work, coordinately, and that appellee was attorney for both, and that the same questions were involved in all the litigation. In fact, it appears that the work was done for the two districts the same as if it was all involved in a single employment. Under those circumstances we are unable to say that the chancellor should have allowed more than $1,250 for the work.

The chancellor allowed Mr. Edrington the sum of $25, which was the statutory allowance of five dollars per day for five days—it being shown that this appellant attended five board meetings. The testimony shows, however, that Mr. Edrington devoted a great deal of time to this district, and in his account he claimed the statutory allowance for sixty-one days and for use of his automobile at four dollars per day. He concedes that he only attended five meetings of the board of commissioners, but the other meetings were devoted to business of the district in traveling around with the attorney and attending lawsuits, and in furnishing his automobile for the use of himself and the engineers of the district. This feature of the case is ruled by our decisions in *Gould v. Toland,* 149 Ark. 476, and *Holcombe v. Kennedy,* 158 Ark. 585. Mr. Edrington may have performed the services in good faith—there is nothing in the evidence that shows to the contrary—but he acted on his own initiative in giving his services outside of attendance on board meetings, and it does not appear that he had any authority from the board of commissioners to perform those services or to furnish an automobile. In fact, the board could not make a valid contract with him for the performance of such services. See cases *supra.* The expenses he claims were not incurred by authority of the board, and, for that reason, he is not entitled to recover.

Our conclusion is that the decree of the chancery court is correct, and the same is therefore affirmed.